Robbye R. WALDRON, Trustee and Allen Krogh and Jack Newitt, Trustees, Appellants,

v.

ZAPATA EXPLORATION CO., Appellee.

No. 01–93–01041–CV.

Court of Appeals of Texas, Houston (1st Dist.).

June 16, 1994.

Robert A. Schwartz, Johnny B. Johnson, Houston, for appellants.

Larry R. Veselka, Clayton A. Platt, Houston, for appellee.

Before OLIVER–PARROTT, C.J., and HUTSON–DUNN and ANDELL, JJ.

## OPINION

OLIVER–PARROTT, Chief Justice.

This is an appeal from a take-nothing judgment entered against appellants, Robbye R.

Waldron, trustee of the chapter 7 bankruptcy estate of Lewis Newitt, and Allen Krogh and Jack Newitt, trustees, in favor of appellee, Zapata Exploration Company, in a breach of an oil and gas exploration contract and farmout agreement. We affirm.

By 1985, Lewis Newitt had acquired oil and gas leases and farmout agreements covering over 7,500 acres in Colorado County. On February 1, 1985, Lewis Newitt agreed to assign his rights in those leases and farmouts to Zapata Exploration Co. in exchange for $1.3 million and Zapata's promise to drill a well to test the area known as the "Garwood Prospect." Specifically, paragraph 3 of the agreement provided for the drilling of a test well:

> Zapex [Zapata] agrees to commence or cause to be commenced drilling operations on or before March 1, 1985, for a test well (the "Initial Test Well") at a location of Zapex's choice within the AMI [area of mutual interest] herein below defined, unless the commencement date of the Cockrell Oil Corporation Farmout described in Exhibit "B" is extended beyond March 1, 1985, then said commencement date for the Initial Test Well shall be the date extended to in said Farmout. The Initial Test Well shall be drilled to a depth sufficient to adequately test the lower Wilcox sands as seen on the electric log for the Amerada Hess—Edith Hopkins Gas Unit 1.

The Cockrell Oil Corporation farmout was extended beyond March 1, 1985, to August 31, 1987. This extended the time Zapata had to bring about the drilling of the initial test well. At the time the original Cockrell farmout expired, however, the initial test well had not been drilled. Although the time for performance under the agreement had expired, Zapata purchased renewals on the Cockrell leases in order to keep the lease block intact in hopes of eventually getting a well drilled.

After the original Cockrell farmout had expired on August 31, 1987, both Zapata and Lewis Newitt continued to seek other oil and gas companies to participate in the Garwood Prospect. Shell Oil Corporation eventually obtained a farmout agreement with Zapata and commenced drilling a test well, the Shell Kane Brandon No. 5, within the area of mutual interest (AMI) on June 17, 1989. Lewis Newitt was aware of the agreement between Shell and Zapata and that he would benefit from any successful well drilled within the AMI. The results from the test well were so discouraging, however, Shell decided the well should be plugged and the entire area was condemned and determined to be uneconomic. On June 6, 1991, Lewis Newitt sued Zapata for breach of contract, alleging non-performance by Zapata in failing to drill a test well or cause one to be drilled before the expiration of the original Cockrell farmout under the terms of the February 1, 1985 agreement.

■ In their third point of error, appellants contend that the trial court committed reversible error by submitting a question to the jury on the issue of whether Lewis Newitt had waived his breach of contract claim against Zapata. Appellants urge that this question was immaterial and that there was no evidence to support its submission. Special question number five asked:

> Do you find by a preponderance of the evidence that plaintiffs waived their claim against Zapata Exploration Co.?

Waiver was defined in the charge as, "an intentional surrender of a known right, or intentional conduct inconsistent with claiming the right." The jury found that appellants had waived their claim against Zapata.

■ Appellants have confined their complaints to the submission of the question, therefore, our review is fairly simple. A trial judge may refuse to submit an issue only if no evidence warrants its submission. *Brown v. Goldstein*, 685 S.W.2d 640, 641 (Tex.1985). Even if the evidence is insufficient to sustain an affirmative finding on that issue, the trial court is obligated to submit the question if the evidence amounts to more than a scintilla. *Garza v. Alviar*, 395 S.W.2d 821, 824 (Tex.1965); *Roy v. Howard–Glendale Funeral Home*, 820 S.W.2d 844, 846 (Tex.App.—Houston [1st Dist.] 1991, writ denied).

There is evidence supporting the submission of the waiver issue to the jury in this record. After the expiration of the contract,

Newitt sent a letter demanding Zapata commence drilling. Mr. Newitt also testified that he was aware of the expenditures made by Zapata in keeping the lease block intact after the expiration of the Cockrell Farmout. He also testified that he knew of Zapata's efforts to find an oil and gas company to drill a test well on the Garwood Prospect. Further, Newitt testified that he knew of the farmout agreement with Shell, knew of the drilling of the Shell Kane Brandon No. 5, and that he would share in any success from that well.

Due to the evidence raising the issue of waiver, it was not error for the trial judge to submit the waiver question to the jury. In fact, it would have been error for him not to do so. *Brown,* 685 S.W.2d at 641. We overrule appellants' third point of error.

Due to our disposition of appellants' third point of error concerning the propriety of the waiver submission, and in light of the jury's finding that appellants had waived their claims against Zapata, we need not address appellants' remaining points of error. The jury's finding of waiver acts as an independent ground for the trial court's judgment.

We affirm the take-nothing judgment of the trial court.