Marvin TULL *v.* STATE of Arkansas

CA CR 02-509                                    119 S.W.3d 523

Court of Appeals of Arkansas
Division IV
Opinion delivered May 14, 2003

*Joe Kelly Hardin*, for appellant.

*Mike Bebee*, Att'y Gen., by: *Katherine Adams*, Ass't Att'y Gen., for appellee.

JOHN MAUZY PITTMAN, Judge. The appellant in this criminal case, age sixty-five, was charged with four counts of violation of a minor in the first degree, committed by engaging in sexual intercourse or deviate sexual activity with his step-granddaughter, T.M. Prior to trial, appellant moved to exclude the testimony of his forty-five-year-old daughter, Marla T., who testified that appellant also sexually violated her while she was a child living in appellant's home thirty years ago. The trial court denied the motion, finding that the testimony came within the pedophile exception to Ark. R. Evid. 404(b), and that the probative value of the testimony outweighed the potential for unfair prejudice under Ark. R. Evid. 403. After a jury trial, appellant was found guilty and was sentenced to six years' imprisonment. From that decision, comes this appeal.

For reversal, appellant contends that the trial court erred in admitting the testimony of Marla. We do not agree, and we affirm.

Rule 404(b) provides that, although evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith, it may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Evidence of other sexual offenses is allowed under the "pedophile exception" to Rule 404(b) to show motive where the other sexual offenses involve a similar act of sexual abuse of children, and where the evidence shows a proclivity toward a specific act with a person or class of persons with whom the accused has had an "intimate relationship," such as where the victim lives with the criminal defendant in the same home or where the offenses were committed in the

criminal defendant's home. *Pickens v. State*, 347 Ark. 904, 69 S.W.3d 10 (2002).

We think that the evidence in the case at bar was probative of both plan and motive. Marla testified that appellant began to sexually fondle her when she was in the fourth or fifth grade, while her siblings were asleep in their beds and her mother was working the night shift. By the time she was twelve or thirteen years old, appellant began having intercourse with her several times per week until she was fifteen. The first act of intercourse occurred when appellant suggested it would be good for her to know what it would be like when she was married. This, too, occurred at night after her mother had gone to work. Afterwards, appellant gave Marla special treatment and privileges, such as staying up late and allowing her to go places with him, in order to create opportunities for him to spend time with her alone. During these times he would have sexual intercourse with her in various places, including their home, the car, at motels, in the laundromat, and outdoors. Appellant took photographs of her naked in many of these locations. Marla refused to continue having intercourse with appellant when she was fifteen years old and told her mother about the abuse, but her mother did not believe her.

Marla also testified that, although she has never again been close to appellant, she did live across the road from him and her mother. She learned that T.M.'s mother and stepfather had made arrangements for her mother and appellant to care for T.M. while they were out of town working, and noticed that appellant was increasingly involved with T.M.'s care to the exclusion of her mother, that appellant always wanted T.M. to accompany him to various places, and that T.M. was getting special privileges that her mother would not have allowed. Based on these observations and her own experiences with appellant, Marla called the Department of Human Services and reported her suspicions of abuse.

The testimony of T.M. described an experience remarkably similar to Marla's. T.M. testified that she was now seventeen years old, and that appellant had volunteered to care for her and her siblings so they would not have to change schools while their parents worked out of town. Appellant would come to their home

before they arrived home from school and stay all night, leaving when they left for school in the morning. Appellant was in charge of where the children went. On arriving home from school, her brother generally went to a friend's house while T.M. stayed home with appellant. Sometimes appellant would allow her to do things or go places that her mother would not want her to do or go. Appellant first molested T.M. by rubbing her chest with suntan lotion during a camping trip at the river. Appellant then began giving her "back rubs" in her bed after her brother was asleep, first stroking the side of her chest but progressing to removing her bra and rubbing her breasts. Ultimately, appellant progressed to penetrating T.M. digitally and with his penis, telling her that she needed to have at least one sex partner before she got married so she would know what it was like. When appellant allowed T.M. permission to do something special, he told her that it was going to "cost her," which she took to mean that he was going to do something sexual to her. Appellant also told her that he would enjoy taking pictures of her outdoors. Finally, she stated that the first time she told an adult about appellant's behavior was after her Aunt Marla called the Department of Human Services and an officer of the State Police came to school to talk to her. At that time, T.M. was barely acquainted with Marla and did not know her last name.

■ In light of the evidence that appellant volunteered to care for T.M., we think that the similarity of the methods by which appellant gradually broke down the girls' inhibitions (fondling escalating to intercourse for the stated "educational" purpose of preparing them for marriage), the offering of special privileges as an inducement, and the efforts he made to create situations where he could be alone with them, tend to show both that appellant had the proclivity to sexually violate young girls entrusted to his care and that, with respect to T.M., he systematically planned to do so. We hold that the testimony of Marla was admissible both to show motive and plan under Rule 404(b).

■ Nor do we agree that the trial court erred in concluding that the probative value of the evidence outweighed the possibility of unfair prejudice. Appellant argues that the passage of thirty years between Marla's abuse and that of the victim makes

Marla's testimony too remote to be used as evidence. This argument is similar to that advanced in *Hernandez v. State*, 331 Ark. 301, 962 S.W.2d 756 (1998), where the appellant urged the supreme court to establish parameters for the admission of evidence pursuant to the pedophile exception. The supreme court rejected this argument, stating that:

> Arkansas R. Evid. 403 provides the necessary "parameters." In response to an objection that evidence is unfairly prejudicial, the probative value of the evidence must be weighed against the danger of unfair prejudice. *George v. State*, 306 Ark. 360, 813 S.W.2d 792 (1991). The standard of review is whether the trial court abused its discretion. *Greene v. State*, 317 Ark. 350, 878 S.W.2d 350 (1994).

*Hernandez*, 331 Ark. at 311, 962 S.W.2d at 761-62.

The *Hernandez* court held that the trial court did not err in concluding that the probative value of the evidence outweighed the danger of unfair prejudice because the evidence involved a similar crime against a child of an age similar to that of the victim, both of whom were in Hernandez's care or household at the time that the incidents occurred. *Id.* Here, the testimony regarding the abuse of the witness was strikingly similar to that describing the abuse of the victim, *see Taylor v. State*, 334 Ark. 339, 974 S.W.2d 454 (1998), the victim and witness were of similar age at the time of the abuse, and both were in the care of the appellant when the abuse took place. We recognize that the passage of thirty years between the events recounted in the testimony of Marla and those for which appellant was convicted in the present case is a significant factor to be considered in determining whether the probative value of the testimony outweighs the danger of unfair prejudice. Nevertheless, in light of the evidence that her own experience thirty years earlier made it possible for Marla to correctly conclude, based on her observation of otherwise innocent behavior, that appellant was sexually abusing T.M., we cannot say that the trial court erred in holding that the probative value of Marla's testimony outweighed the danger of unfair prejudice.

Affirmed.

NEAL and ROAF, JJ., agree.