2012 Ark. App. 310

**Jameko J. WILLIAMS, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 11–857.**

Court of Appeals of Arkansas.

May 2, 2012.

Joseph P. Mazzanti, III, Lake Village, for Appellant.

Dustin McDaniel, Atty. Gen., Pamela A. Rumpz, Asst. Atty. Gen., for Appellee.

DAVID M. GLOVER, Judge.

Appellant Jameko Williams was tried by a jury and found guilty of the offense of possession of cocaine with intent to deliver. In this appeal, he contends 1) that there is insufficient evidence to support his conviction, 2) that the trial court abused its discretion in denying his motion for a mistrial, and 3) that the trial court abused its discretion in allowing a state trooper to give his lay opinion concerning money that was found on Williams at the time of his arrest. We affirm.

Trooper David Tumey testified that he came into contact with Williams while on patrol in Crossett. As a result of his

observations of the vehicle that Williams was driving, Tumey turned on his camera and began following Williams's vehicle. In reviewing the patrol-car video tape for the jury, Tumey explained that the vehicle driven by Williams was weaving in the road, that the vehicle made a wide right turn without using a turn signal, and that the vehicle drove left of center in the middle of the roadway. He explained that he decided to make a traffic stop based on those observations. Tumey stated that when he approached the vehicle, Williams rolled the driver's side window down two or three inches and "the smell of marijuana just, knocked me out." Tumey said that he has been in law enforcement for seventeen years, that he has been a narcotics officer and K–9 handler, and that he had come in "contact with it a bunch." His observations of Williams also made him suspect that Williams had been drinking because "he had red, watery eyes, his speech was slurred, and his breath smelled of intoxicants." He had Williams exit the vehicle and began administering field-sobriety tests. As Tumey was testifying, Williams's counsel, Ms. Hudson, a deputy public defender, asked to be excused, and the trial court called for a recess.

When the trial resumed, Tumey explained that after he conducted the field-sobriety tests, he concluded that Williams was under the influence of a controlled substance rather than alcohol. He also explained that two Crossett police officers arrived to assist as he was conducting the field-sobriety tests. He identified the passengers in the video, explained where they had been seated in the vehicle, and described what the officers found during their pat-downs and the search of the vehicle. Tumey then testified that one of the Crossett police officers, Officer Black, asked him if he had seen the clear plastic baggie (containing cocaine), hanging from between the mirror and the driver's window. He explained that he had not seen it until Officer Black pointed it out, but that he did not observe any of the passengers throw anything out after the stop and that, based on his experience and training, he believed that Williams had tried to toss the baggie when he had swerved the vehicle "way left." He explained that the video of the stop ended at that point.

Tumey testified that he had worked undercover, purchasing crack cocaine, more than a hundred times, and that the substance in the photograph was consistent with crack cocaine. The prosecutor then asked to have Tumey declared an expert in the field of narcotics investigation, transactions, and the value of crack cocaine. Ms. Hudson, Williams's counsel, objected, and the court asked the prosecutor if he wanted to voir dire Tumey.

During the State's voir dire of Tumey concerning his experience, Ms. Hudson had to leave the courtroom again. The court declared another recess. Later, out of the jury's presence, Mr. Steve Porch, chief legal counsel for the public defender's office, arrived. In response to the trial court's question regarding who was going to go forward with the trial, Mr. Porch stated, "Both of us will finish it because I need to know what she knows." The court responded, "Okay. I don't have a problem with that." The argument between defense counsel and the State about declaring Tumey an expert then continued. The prosecutor eventually stated, "If the whole idea is that he's being called an expert by the Court, I'll withdraw that and then I can ask my questions and he can still give that opinion." The trial court ruled that he would allow Tumey to give his opinions, noting the exception by the defense.

Ms. Hudson then moved for a mistrial, contending that because of her illness, the trial had become fragmented, and it would

be unfair to her client and to the jury to continue. The trial court denied the motion, reasoning that Porch and Hudson were capable of going forward and that it was not a case of great complexities.

The direct examination of Tumey continued, with the trooper explaining that the photograph showed approximately six white rocks, each about the size of an eraser, and that it was consistent with what he purchased in the past when he bought cocaine or crack cocaine as an undercover officer. He said that one rock usually sold for about $20. Tumey concluded by stating that he took Williams to the Crossett Police Department, and Williams had about $418 on his person in twenties, tens, fives, and ones. Tumey expressed the opinion that the "amount, the way this money was found would be consistent with drug sales."

Simone Phillips testified that she was with Williams in the vehicle when it was stopped by police. She said that she, Williams, Marisha Mitchell, and Johnny Mack were all in the vehicle. She said that when they saw the police lights come on, Williams rolled the window down to air out the vehicle but that she did not know about him throwing anything out. She acknowledged that in her statement, she did not say anything about letting the smoke out and that the statement also said that she did not actually know if he threw anything out, but she assumed when he rolled the window down it was to let something out. She denied throwing out the baggie herself and said that she did not see anybody else throw anything out the window after the vehicle was stopped. She said that she was sitting in the passenger seat, and that she received a ticket for possession of marijuana but denied being given a deal to testify. She said that they were all smoking marijuana, that she did not see Williams with any crack, and that she did not see him throw out any crack.

Christy Williford testified that she works for the Arkansas State Crime Lab as a forensic chemist, that she performed the forensic tests, and that she found 0.8406 grams of cocaine base, commonly known as crack.

The State rested, and the defense moved for a directed verdict, contending that the State had not established Williams's possession of the cocaine with intent to deliver. The trial court denied the motion. The defense rested. The jury deliberated and then returned a guilty verdict.

For his first point of appeal, Williams challenges the sufficiency of the evidence supporting his conviction, contending that the State failed to prove that he ever had possession of the contraband. We disagree.

In reviewing the sufficiency of the evidence supporting a conviction, we view the evidence in the light most favorable to the State and affirm if there is substantial evidence to support the conviction. *Chapman v. State*, 343 Ark. 643, 38 S.W.3d 305 (2001). Substantial evidence is evidence forceful enough to compel a conclusion beyond suspicion or conjecture. *Id.* Credibility determinations are left to the factfinder. *Id.*

The baggie containing the crack cocaine was not physically in Williams's possession when it was found. Consequently, in deciding if the State established that he constructively possessed it, we look to whether the contraband was located in a place that was under the dominion and control of the accused. *Holt v. State*, 2009 Ark. 482, 348 S.W.3d 562. Constructive possession can be implied when the controlled substance is in the joint control of the accused and others, but there must also be some additional factor

linking the accused to the contraband, indicating his knowledge and control of the contraband. *Id.* In cases involving multiple occupants of a vehicle, our supreme court has identified several linking factors, including: 1) whether the contraband was in plain view, 2) whether it was found in the accused's personal effects, 3) whether it was found on the same side of the vehicle seat as the accused or in close proximity, 4) whether the accused is the owner of the vehicle or exercises dominion and control over it, and 5) whether the accused acted suspiciously before or during the arrest. *Kilpatrick v. State*, 322 Ark. 728, 912 S.W.2d 917 (1995).

■ Here, viewing the evidence in the light most favorable to the State, Williams was driving the vehicle, and thus exercising dominion and control over it. Although Tumey did not initially observe the baggie hanging from the driver's side mirror, that is where it was found by another officer during the course of the stop, in plain view. Tumey testified that, based on his experience, Williams's swerving of the vehicle was an indication that he was trying to throw something out of the driver's window. He also testified that he did |₇not observe any other occupant throw anything out of the vehicle. Simone Phillips, an occupant, testified that she did not see Williams throw out the baggie, but neither did she see anyone else do so, and she denied throwing it out herself. We hold that there was substantial evidence to support the conclusion that Williams possessed the contraband.

■ For his second point of appeal, Williams contends that the trial court erred in denying his motion for mistrial. The motion was made by Williams's original counsel, Ms. Hudson, whose sudden illness caused her to have to leave the trial on two occasions: 1) during the direct examination of Tumey, and 2) during her voir dire of Tumey in the State's attempt to have him qualified as an expert in drug trafficking so that he could testify about how the money found on Williams was indicative of drug dealing. The argument she made below for declaring a mistrial was that the trial had become fragmented, with interruptions at critical points, causing a considerable delay, and that those concerns made it unfair to Williams and to the jury to continue. No request to admonish the jury was made. To the extent that Williams attempts to expand the argument in this appeal by also arguing that the new attorney was brought in with no explanation to the jury, we do not address that portion of the argument because it was not preserved for appeal.

■ Declaring a mistrial is a drastic remedy and proper only where the error is beyond repair and cannot be corrected by any curative relief. *Moore v. State*, 323 Ark. 529, 915 S.W.2d 284 (1996). The trial court should resort to mistrial only where the error complained of is so prejudicial that justice cannot be served by continuing the trial or |₈when the fundamental fairness of the trial itself has been manifestly affected. *Id.* Because the trial court is in a better position to determine the effect of a remark on the jury, it has wide discretion in granting or denying a motion for a mistrial, and its discretion will not be disturbed except where there is an abuse of discretion or manifest prejudice to the movant. *Id.* In reviewing a mistrial motion, we look at all developing circumstances that surround an incident to determine whether a manifest abuse of discretion occurred. *Plessy v. State*, 2012 Ark. App. 74, 388 S.W.3d 509.

The question to be answered here is whether, in reviewing all of the circumstances surrounding this incident, we determine that a manifest abuse of discretion occurred. We find no abuse of discretion.

There were only two interruptions, and we are not convinced that the trial became so "fragmented" by those delays as to be unfair to Williams. Moreover, Ms. Hudson remained at the defense table to assist co-counsel when he came in to replace her as lead counsel; so, neither are we convinced that Williams was in any way prejudiced by the substitution of lead counsel.

■ As his final point of appeal, Williams contends that the trial court abused its discretion by permitting Tumey to render a lay opinion that the amount of money and the way it was found on Williams at the time of his arrest were consistent with drug sales. We disagree.

■ The colloquy at trial concerning this evidence was somewhat confusing because the majority of the evidentiary argument between the State and defense counsel concerned Tumey's qualifications as an expert witness. Once the State withdrew its efforts to present his testimony as expert, the trial court rather summarily allowed Tumey to offer his lay opinion instead, with the trial court noting the defense exception to that type of opinion. Tumey testified that the amount of money found on Williams at the time of arrest, $418, and the fact that it was in denominations of twenties, tens, and fives, were consistent with drug sales.

Rule 701 of the Arkansas Rules of Evidence provides:

> Rule 701. Opinion testimony by lay witnesses.
>
> If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are
>
> (1) Rationally based on the perception of the witness; and
>
> (2) Helpful to a clear understanding of his testimony or the determination of a fact in issue.

*See also Bridges v. State*, 327 Ark. 392, 938 S.W.2d 561 (1997) (explaining that Rule 701 is not a rule against opinions, but one that conditionally favors them). This court will not reverse a trial court's evidentiary ruling unless it abused its discretion in making the ruling. *Moore v. State*, 323 Ark. 529, 915 S.W.2d 284 (1996). We find no abuse of discretion in the trial court allowing Tumey's lay opinion on this issue. Tumey testified that he had been involved in many undercover drug deals. This established a rational basis upon which to express his opinion, and this testimony helped flesh out the issue of whether Williams possessed the cocaine with intent to deliver. In short, the trial court did not abuse its considerable discretion in allowing this opinion testimony. It was then up to the jury to determine how much weight that opinion should be given.

Affirmed.

GRUBER, J., agrees.

HART, J., concurs.

HART, J., concurring.

I agree that this case should be affirmed, but I write separately because I cannot subscribe to the majority's rationale for affirming the trial court's decision to allow a state trooper to give "lay opinion" testimony that the $418 found on Williams at the time of his arrest indicated that he was a drug dealer. I nonetheless would affirm on this point because, even though the trial court clearly abused its discretion in admitting the testimony, the error was harmless.

The majority opinion blurs the distinction in our rules of evidence between lay opinion and expert opinion. They are not the same. Arkansas Rule of Evidence 701 (2011) states:

If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are

(1) Rationally based on the perception of the witness; and

(2) Helpful to a clear understanding of his testimony or the determination of the fact in issue.

In comparison, Rule 702 provides as follows:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

The key distinction is the "specialized knowledge" requirement of Rule 702. It is universally held—with the exception of today's majority opinion—that lay witnesses cannot testify to matters outside the common knowledge of lay persons.[1] Barbara E. Bergman & Nancy Hollander, 3

---

1. The treatise cites the following cases in support of that proposition:

*People v. Williams*, 3 Cal.App.4th 1326, 5 Cal.Rptr.2d 130 (1992) (Matters beyond common experience are not proper subjects of lay opinion testimony.); *People v. Hernandez*, 229 Ill.App.3d 546, 171 Ill.Dec. 303, 593 N.E.2d 1123 (1992) (Although opinion testimony of lay witness generally is not admissible, witness may express opinion based upon his observation where it is difficult to reproduce for jury totality of conditions perceived and where opinion is one that individuals in general are accustomed to and capable of making and understanding.); *People v. Steffens*, 131 Ill.App.3d 141, 86 Ill.Dec. 392, 475 N.E.2d 606 (1985) (Lay witness may express opinion based on his observations where it is difficult to reproduce for the jury the totality of conditions perceived and where opinion given is one that persons in general are capable of making and understanding.); *Mariscal v. State*, 687 N.E.2d 378 (Ind.Ct.App.1997) (Requirement that opinion testimony of skilled witness or lay person be "rationally based" on perception means simply that opinion must be one that reasonable person normally could form from perceived facts.); *State v. Carter*, 685 So.2d 346 (La.Ct.App. 1996) (Generally lay witness can only testify to facts within witness's knowledge and not to impressions or opinions although witness is permitted to draw reasonable inferences from personal observations; where subject of testimony is such that any person of experience may make natural inference from observed facts, lay witness may testify as to such inferences, provided witness also states observed facts.); *State v. Bates*, 536 So.2d 427 (La.Ct.App.1988) (Nurse could testify that presence of male seminal fluid in victim's vaginal vault indicated sexual intercourse, though she was not qualified as expert, as significance of male seminal fluid in vaginal vault is matter of common knowledge.); *State v. Rousselle*, 514 So.2d 577 (La.Ct.App.1987), (child's mother was not qualified to answer theoretical question posed on cross-examination as to whether car seat used to transport child could have caused some of child's injuries in trial for cruelty to a juvenile; question called for expert opinion); *Com. v. Austin*, 421 Mass. 357, 657 N.E.2d 458 (1995) (Competence of lay opinion testimony requires that subject matter of testimony cannot be reproduced or described to jury precisely as it appeared to witness at the time and that facts upon which witness is called to express opinion are such as people in general can comprehend and understand); *State v. Martin*, 142 N.H. 63, 694 A.2d 999 (1997) (Lay witnesses may not testify competently about medical diagnosis, and generally, may not draw conclusions which require obligation of specialized medical knowledge.); *State v. Johnson*, 120 N.J. 263, 576 A.2d 834 (1990) (Lay witness may give opinion on matters of common knowledge and observation.); *State v. Luna*, 92 N.M. 680, 594 P.2d 340 (1979) (Foundation required for admitting evidence of lay opinion is showing of firsthand knowledge on part of witness, and a rational connection between the observations made and the opinion formed, and requirement of rational basis is satisfied if opinion or inference is one which normal person would form on basis of facts observed; if such requirements are present and knowledge of the opinion would be helpful in determination of facts in issue,

Wharton's Criminal Evidence, § 12–2 (15th ed.2011). In short, it is my view that the majority erroneously states that the "rationally based on the perception of the witness" language incorporates the witness's specialized knowledge. I submit that it is not within the authority of the court of appeals to alter the rules of evidence, which are promulgated by our supreme court.

Nonetheless, this obvious evidentiary error does not require us to reverse this case because the error was harmless. It is well settled that evidentiary rulings are subject to harmless-error analysis, and we are bound to affirm if the error is harmless beyond a reasonable doubt. *Sparkman v. State*, 91 Ark.App. 138, 208 S.W.3d 822 (2005). Here, |₁₃there was evidence that Williams possessed cocaine in an amount four times greater than the statutory presumption that he possessed the drugs with intent to deliver. Ark.Code Ann. § 5–64–401(d) (Supp.2009) (law prior to repeal). No evidence was offered to rebut that presumption.

opinion is admissible.); *People v. King*, 183 A.D.2d 918, 584 N.Y.S.2d 153 (1992) (Trial court properly precluded defendant's brother-in-law from testifying that defendant did not speak with Jamaican accent, as complainant did not rely on voice identification and brother-in-law was not expert in linguistics.); *State v. Wingard*, 891 S.W.2d 628 (Tenn.Crim.App.1994) (Correction officer's testimony that he yelled loud enough for prisoner to hear from some 300 to 350 yards away was admissible in defendant's prosecution for felony escape, where officer's conclusions required no expertise and were within range of common experience); *Fairow v. State*, 943 S.W.2d 895 (Tex.Crim. App.1997) (Opinion rationally based on perception, for purposes of rule allowing admission of lay opinion, if it is an opinion that a reasonable person could draw under the circumstances; however, opinion not capable of reasonably being formed from the events underlying the opinion must be excluded.).