ROBERT J. GLADWIN, Judge
Appellant Anthony Baumann appeals his September 29, 2017 conviction by a Benton County jury on a charge of second-degree sexual assault of E.S., for which he was sentenced to twenty years' incarceration in the Arkansas Department of Correction (ADC). Baumann argues that (1) the circuit court erred in denying his motion to exclude the testimony of his daughter, Tanya Bridges, regarding allegations of sexual assault that presumably occurred twenty-eight years prior to the trial pursuant to Arkansas Rule of Evidence 404(b) (2017); (2) the circuit court erred in refusing to exclude the same testimony pursuant to Arkansas Rule of Evidence 403 (2017); and (3) the State's questioning of Detective Brian Hanna regarding other sexual-assault accusations against Baumann warranted a mistrial. We affirm.
I. Facts
Baumann was charged with one count of rape and one count of sexual assault in the second degree against a minor, E.S. Prior to trial, the circuit court held a hearing on Baumann's pretrial motion to exclude Bridges's Rule 404(b) testimony. At the time of the hearing, Bridges was forty years old. She testified that she is Baumann's biological daughter and grew up with Baumann and that the sexual abuse started in "probably the fourth or fifth grade." Bridges testified that when she was in the sixth grade, Baumann came into her bedroom and touched her on the arm and shoulder. That type of event continued with his touches progressing until eventually he was touching her vagina. She explained that his visits to her room occurred at night while other people were in the house, but she had a bedroom to herself. As she got older, Baumann moved from touching her vagina to forcing Bridges to touch his penis and to forcing her to engage in oral and vaginal intercourse. She testified that once, after vaginal intercourse, Baumann told her how beautiful she was. The circuit court found Bridges credible and stated that she would be allowed to testify. The circuit court ruled that the testimony would be admissible under the pedophile exception pursuant to Ark. R. Evid. 404(b) and that it did not violate Ark. R. Evid. 403. Baumann renewed his objection to Bridges's testimony at trial, and the circuit court again denied his objection.
Baumann is the biological grandfather of V.B. V.B. and E.S. are half-sisters and share the same mother. E.S., who was thirteen years old at the time of the trial, testified that her mother, Erika Shirley, was previously in a relationship with Baumann's son, Adam. E.S. first started spending time around Baumann when she was nine or ten years old. During that time, she would occasionally stay the night with Baumann and his wife. She testified that Baumann would come into her room at night as she was getting ready for bed *498 or after she was already in bed. E.S. explained that she would be in the bedroom by herself. Baumann would sit on her bed and tell her to take off her shorts and underwear or lift up her nightgown. He would touch her on her breasts and her vagina underneath her clothes. E.S. also testified that Baumann would lick her vagina. When he did this, her clothes would be around her ankles, and his hands would be on her knees, spreading her legs apart. E.S. stated that Baumann also made her touch his penis while in the living room when no one else was home. She testified that he told her not to tell anyone or both of them would get into trouble.
Bridges testified at trial that when she was thirteen or fourteen,[1] Baumann would come into her room, caress her on the arm, and touch her vagina, which eventually led to digital penetration. Bridges also testified that Baumann had vaginal intercourse with her when she was fourteen or fifteen, that Baumann made her masturbate him, and that he made her perform oral sex on him. She explained that one time after intercourse, Baumann told her she was beautiful. Bridges testified that the abuse stopped when she was sixteen and she had her first boyfriend; Baumann solicited her one last time to engage in sexual activity with him and then she could do whatever she wanted to with her boyfriend.
At trial, the State directed Detective Hanna to read into evidence a portion of the Child Safety Center (CSC) interview of E.S., which included the allegation that Baumann had been accused of touching "his other granddaughters." The circuit court sustained Baumann's objection to this testimony but did not grant a mistrial sua sponte in the absence of a request from Baumann.
The circuit court granted Baumann's directed-verdict motion only on the rape count based on a lack of evidence of penetration of E.S. and denied Baumann's directed-verdict motion as to the remaining count of sexual assault in the second degree. The jury convicted Baumann of sexual assault in the second degree, and the circuit court sentenced him to a term of imprisonment of twenty years in the ADC and imposed a fine of $15,000 pursuant to a sentencing order filed on October 17, 2017. Baumann filed a timely notice of appeal, and this appeal followed.
II. Rule 404(b)
Challenges to an evidentiary ruling are reviewed under the abuse-of-discretion standard. Hortenberry v. State , 2017 Ark. 261, 526 S.W.3d 840. The abuse-of-discretion standard is a high threshold that does not simply require error in the circuit court's decision, but requires that the circuit court act improvidently, thoughtlessly, or without due consideration. Id. ; Holland v. State , 2015 Ark. 341, 471 S.W.3d 179. Additionally, an evidentiary decision will not be reversed absent a showing of prejudice. Hicks v. State , 2017 Ark. 262, 526 S.W.3d 831.
Pursuant to Rule 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." Such evidence is permissible for other purposes, however, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." E.g. , *499 Duvall v. State , 2018 Ark. App. 155, at 5, 544 S.W.3d 106, 110. "Under Ark. R. Evid. 404(b), evidence of other crimes will be admitted if it has independent relevance, and its relevance is not substantially outweighed by the danger of unfair prejudice." Jones v. State , 349 Ark. 331, 339, 78 S.W.3d 104, 110 (2002). Evidence is independently relevant if it tends to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Cluck v. State , 365 Ark. 166, 226 S.W.3d 780 (2006).
Arkansas appellate courts recognize a "pedophile exception" to Rule 404(b)"that allows the State to introduce evidence of the defendant's similar acts with the same or other children when it is helpful in showing a proclivity for a specific act with a person or class of persons with whom the defendant has an intimate relationship." Duvall , 2018 Ark. App. 155, at 6, 544 S.W.3d at 110. The rationale for the exception is that such evidence helps to prove the depraved sexual instinct of the accused. Jeffries v. State , 2014 Ark. 239, 434 S.W.3d 889. Further, it is admissible to show the familiarity of the parties, disposition, and antecedent conduct toward one another and to corroborate the testimony of the victim, see Fields v. State , 2012 Ark. 353, at 6, 2012 WL 4471112, and to show motive, intent, or plan. See Holland, supra. Also, " Rule 404(b) makes no distinction between substantiated and unsubstantiated conduct, or between charged and uncharged conduct. This court has explicitly held that our application of the pedophile exception does not require that the prior act be charged or substantiated." Holland , 2015 Ark. 341, at 8, 471 S.W.3d at 185.
While the State may introduce evidence of unsubstantiated prior allegations to show an accused's "proclivity to offend," there are three essential restrictions on the pedophile exception. First, courts "require that there be a sufficient degree of similarity between the evidence to be introduced and the sexual conduct of the defendant." Id. Physical similarities between the alleged victim and the 404(b) witness such as age and gender are relevant when there is not "identical" conduct toward each by the accused. See Stewart v. State , 2011 Ark. App. 658, at 7, 386 S.W.3d 583, 587. Second, it is necessary "that there be an 'intimate relationship' between the perpetrator and the victim." Holland , 2015 Ark. 341, at 7, 471 S.W.3d at 184. The relationship must be one "close in friendship or acquaintance, familiar, near, or confidential." Eubanks v. State , 2009 Ark. 170, at 4-5, 303 S.W.3d 450, 453. This standard is not strict; the act of babysitting has been found to satisfy the "intimate relationship" criterion. See Morrison v. State , 2011 Ark. App. 290, at 4, 2011 WL 1495994.[2]
Third, evidence admitted pursuant to Rule 404(b) must not be too separated in time, making the evidence unduly remote. Holland , 2015 Ark. 341, at 8, 471 S.W.3d at 185. "[A] reasonableness standard is used to determine whether a crime remains relevant rather than a specific time limit." Id. at 9, 471 S.W.3d at 185.
A. Similarity of Allegations
The pedophile exception has been used in cases in which there was substantial similarity between the prior allegations *500 and the newly charged conduct. See Woods v. State , 2013 Ark. App. 739, at 8, 431 S.W.3d 343, 348 (holding that a prior conviction for molesting the defendant's minor stepdaughter when she was isolated, and threatening her to not report the abuse, was admissible when he was later charged with the same conduct with another stepdaughter); see also Eubanks , 2009 Ark. 170, at 5-6, 303 S.W.3d at 453 (concluding evidence is allowed when the defendant was accused of digitally penetrating two girls who were under his care and similar in age at the time the abuse occurred).
In Hortenberry , supra , substantial similarity was found when the victim and two witnesses, all of whom were within two years of age of each other, testified that the defendant performed oral sex on them when they stayed at his house. Each testified that she had been given alcohol or a "white pill" to help her sleep, that she slept on the defendant's living room floor, and that he bought various gifts for her. Hortenberry. , 2017 Ark. 261, at 11, 526 S.W.3d at 847. Substantial similarity also was found when two twelve-to fourteen-year-old boys testified that the defendant reached out to them as a friend of the family, took them places, bought them gifts, showed them pornography, and forced masturbation and oral sex on them at his home. Kelley v. State , 2009 Ark. 389, 327 S.W.3d 373. The Arkansas Supreme Court has relied on discernible patterns of how the abuse develops or occurs, holding there was substantial similarity when the defendant spoke to his victims in an attempt to rationalize his behavior in some way. See Flanery v. State , 362 Ark. 311, 208 S.W.3d 187 (2005).
Conversely, the pedophile exception was not applicable when the defendant was on trial for engaging in anal sex with a four- to eight-year-old female and the prior act being introduced was his alleged genital touching and oral sex with his twelve- to fourteen-year-old half brother that occurred seventeen years prior to the offense. Efird v. State , 102 Ark. App. 110, 282 S.W.3d 282 (2008).
Baumann argues that this case is more like Efird than any case in which substantial similarity was found. Baumann asserts that the substantive nature of the allegations of Bridges and E.S. are fundamentally different with Bridges's allegations being far more serious and violative than E.S.'s allegations. Baumann was on trial for class B felony sexual assault, and the jury was presented with Bridges's testimony about the alleged incestuous rape of his teenage daughter. He argues that Bridges's "404(b) evidence" was drastically dissimilar and far more severe than the actual conduct for which Baumann was on trial with no similar pattern of abuse.
Baumann also argues that there is no "class of persons." E.S. testified that she had been ten years old at the time of the alleged acts, and it is undisputed that she is not related to Baumann. Conversely, Bridges's testimony was inconsistent as to her age during the alleged abuse-ranging from between the ages of ten and sixteen years of age-and she is Baumann's biological daughter. Baumann argues that there is a difference between a prepubescent ten-year-old girl and a thirteen- to sixteen-year-old girl who is in the middle of puberty or is already postpubescent. He also claims the biological relationship between Bridges and Baumann is important, because it cannot be disputed that there is a difference between a sexual offense against a person in general versus against a blood relative.
We disagree and hold that the evidence of Baumann's sexual abuse of Bridges is sufficiently similar to his sexual abuse of E.S. Our supreme court has consistently considered similarities in age and gender *501 of the victims to be demonstrative of a depraved sexual instinct, such that the pedophile exception is applicable. E.g. , Kelley , supra (victims were twelve- to fourteen-year-old males at the time of the abuse). The court has also not required that the sexual acts be identical to be permissible under the pedophile exception. E.g. , Fields , 2012 Ark. 353, at 8.
Specifically, in Lamb v. State , 372 Ark. 277, 275 S.W.3d 144 (2008), our supreme court held that the pedophile exception applied when Lamb occupied a caregiver role for both the victim and witness and that the sexual act-oral sex-was identical. And in Flanery , supra , the court held that evidence that Flanery inappropriately touched his daughter was properly admitted under the pedophile exception in his conviction of ten counts of rape of another girl because it showed a proclivity toward molesting young girls.
The Arkansas Supreme Court has also found that testimony fit into the pedophile exception when it described a particular method for finding opportunity to make sexual contact with a victim. See, e.g. , Jefferies , 2014 Ark. 239, at 7-8, 434 S.W.3d at 895 (three of four victims testified to having been awoken by Jefferies as he performed oral sex on them). The pedophile exception also was met in Holland , supra , when the sexual abuse differed from victim to victim, but Holland's method of befriending young boys, combined with the fact that the abuses occurred in his home or a place under his control and involved crude remarks about the boys' anatomy, demonstrated acts of a similar nature. Id. , 2015 Ark. 341, at 9-10, 471 S.W.3d at 185-86 ; see also Hernandez v. State , 331 Ark. 301, 308, 962 S.W.2d 756, 760 (1998) (testimony that, although dissimilar to the charged act, showed accused's attraction to young girls' physical characteristics and proclivity toward sexual abuse of young girls).
We find no merit in Baumann's argument that the alleged abuse was "drastically dissimilar." Both Bridges and E.S. testified that (1) when the abuse occurred, Baumann was in a supervisory role; (2) they were the only ones staying in their bedrooms when the abuse occurred; (3) Baumann would enter their bedrooms at night, and the abuse would occur near or on their beds; (4) Baumann initiated the abuse by rubbing them on the vagina inside their clothes; (5) as time progressed, Baumann would have them touch his penis; (6) eventually, oral sex occurred.
The similarities in the testimony demonstrate that Baumann preyed on the girls in their bedrooms at night. The pattern of his abuse was similar in that he began by caressing them and then rubbing their vaginas before progressing to oral sex as his victims got older. To the extent that Baumann argues the abuses were dissimilar because of an age difference, he is wrong. Baumann abused E.S. when she was ten years old. Although Bridges initially said she was fourteen or fifteen when the abuse happened, she consistently stated that the abuse started in the fourth or fifth grade. That would mean the abuse started when Bridges was between ten and twelve years old, a fact that she acknowledged during cross-examination. Thus, when the abuse began, both E.S. and Bridges were prepubescent girls[3] and similar in age.
Even viewing the testimony in the light most favorable to Baumann, the age difference still falls within that which the court has permitted for the pedophile exception *502 to apply. See Fields , 2012 Ark. 353, at 7 (permitting a six-year difference as the victim was seven when her abuse occurred and one of the witnesses was thirteen when his abuse occurred).
B. Remoteness of Allegations
The second requirement for 404(b) evidence is that it must not be too separated in time, to make the evidence unduly remote. Holland , 2015 Ark. 341, 471 S.W.3d at 185, 2017 Ark. 261, at 8. "[A] reasonableness standard is used to determine whether a crime remains relevant rather than a specific time limit." Id. , at 9, 471 S.W.3d at 185. In its application of Rule 404(b), our supreme court has suggested that this requirement, regardless of the time span involved, is automatically met if the first requirement of similarity is satisfied; i.e., if the acts are substantially similar, then the act can never be remote. See Lamb, supra.
Baumann notes that here, Bridges was forty-one years old at trial, and she testified that she was raped by Baumann from the ages of approximately thirteen to sixteen years old. Accordingly, the allegations were between twenty-five and twenty-eight years old at the time of this trial, which he maintains makes them unduly remote and unconnected to the charged conduct against E.S. Baumann argues that Bridges's allegations were so separated in time that even she could not fully or accurately recall the details of the alleged abuse.
Acknowledging that the evidence must not be too separated in time, to make it unduly remote, see, e.g. , Brown v. State , 2012 Ark. 399, at 7, 424 S.W.3d 288, 293, the State points out that under the reasonableness standard, the circuit court has sound discretion over the matter and will be overturned only when it is clear that the evidence has no connection with any issue in the present case. E.g. , Jeffries , 2014 Ark. 239, at 7, 434 S.W.3d at 895.
The remoteness-in-time element is but one of the factors considered in determining similarities between the evidence to be introduced and the defendant's sexual conduct. Morrison v. State , 2011 Ark. App. 290, at 4-5. Sufficiently similar evidence may be admitted "even when a significant time gap exists." Allen v. State , 374 Ark. 309, 317, 287 S.W.3d 579, 585 (2008). In certain circumstances, appellate courts have allowed evidence from many years past to be introduced for these purposes. Id. (holding that prior-rape evidence that was more than forty-years old was relevant and had a connection to the case at bar); see also Butler v. State , 2010 Ark. 259, at 3, 2010 WL 2132266 (holding that evidence that was a minimum of twenty-one-years old was admissible); see also Brown v. State , 2010 Ark. 420, 378 S.W.3d 66(allowing evidence of alleged sexual assault that occurred thirty-four years earlier); Rohrbach v. State , 374 Ark. 271, 277-78, 287 S.W.3d 590, 595-96 (2008) (upholding admission of testimony under pedophile exception of prior acts that occurred between nineteen and twenty-four years earlier); Tull v. State , 82 Ark. App. 159, 163, 119 S.W.3d 523, 525 (2003) (holding thirty-year-old evidence admissible).
Here, Baumann's abuse against Bridges began approximately thirty years prior to the abuse of E.S. This is within the time frame permitted by appellate courts. Because the abuse suffered by Bridges was similar to that of E.S., the circuit court was correct in finding that it was relevant and had a strong connection with the issue in the present case. We hold that the circuit court did not abuse its discretion by permitting Bridges's testimony pursuant to the pedophile exception.
*503 III. Rule 403
Even if evidence of prior allegations of child abuse meets the criteria for the pedophile exception to Rule 404(b), Baumann notes that the evidence is still subject to potential exclusion under Rule 403 if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. Holland, supra. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Ark. R. Evid. 403. He argues that Bridges's testimony had essentially no probative value and severely prejudiced him through inflammation and confusion of the jury.
As discussed above, the limited purpose for which Bridges's testimony was admitted was under Rule 404(b) to show the proclivity of Baumann to engage in "specific acts" with a certain class of persons. Baumann argues that the only possible construction of Bridges's testimony as being probative is to say that the jury had to decide whether E.S. was telling the truth about her allegations, so the fact that Baumann is accused of raping his own teenage daughter almost thirty years ago supports that belief. He claims that such an argument flies in the face of the clear language and spirit of Rule 404(b) that a person's prior bad acts may not be used solely to prove that he acted in conformity therewith for the currently charged crime. Accordingly, he urges that Bridges's testimony had little to no probative value given the actual issue submitted to the jury.
Further, Baumann contends that Bridges's testimony unfairly inflamed the jury because of the gravity of her allegations that he incestuously raped his own biological daughter. Baumann asserts that as soon as the jury heard Bridges's accusations, he was no longer on trial for anything he might have done to E.S.; rather, he was, in effect, on trial for Bridges's thirty-year-old, uncharged, uncorroborated allegations.
We decline to review Baumann's Rule 403 argument on appeal because he failed to obtain a clear ruling from the circuit court as to whether the probative value of the witness's testimony was substantially outweighed by the danger of unfair prejudice to him. Appellants must obtain a ruling on whether Rule 404(b) evidence should have been excluded under Rule 403 to preserve the issue for appeal. E.g. , Duvall , 2018 Ark. App. 155, at 9-10, 544 S.W.3d at 112. Baumann initially made a Rule 403 objection in conjunction with his Rule 404(b) objection at the pretrial hearing on the issue. The circuit court ruled that the evidence was admissible for Rule 404(b), but it specifically reserved a ruling on whether the evidence was admissible for Rule 403. At trial, Baumann made no further mention of a Rule 403 objection. Prior to Bridges's testimony, Baumann renewed his Rule 404(b) objection and sought and received a limiting instruction on Rule 404(b). The circuit court's ruling indicated that he renewed only his Rule 404(b) objection. Neither Baumann's abstract nor his brief indicate that the circuit court ruled on his Rule 403 objection. Additionally, because the circuit court never made a Rule 403 finding, the required balancing analysis never occurred. E.g. , Cluck , 365 Ark. at 175, 226 S.W.3d at 787 (the circuit court must conduct a probative versus prejudicial weighing with respect to evidence if defense considers the weighing to be important or legally required to preserve the Rule 403 issues for appeal).
*504 IV. Mistrial Analysis
Our standard of review regarding mistrials was reiterated in Williams v. State , 2012 Ark. App. 310, at 7-8, 420 S.W.3d 487, 491 (internal citations omitted):
Declaring a mistrial is a drastic remedy and proper only where the error is beyond repair and cannot be corrected by any curative relief. The circuit court should resort to mistrial only where the error complained of is so prejudicial that justice cannot be served by continuing the trial or when the fundamental fairness of the trial itself has been manifestly affected. Because the circuit court is in a better position to determine the effect of a remark on the jury, it has wide discretion in granting or denying a motion for a mistrial, and its discretion will not be disturbed except where there is an abuse of discretion or manifest prejudice to the movant. In reviewing a mistrial motion, we look at all developing circumstances that surround an incident to determine whether a manifest abuse of discretion occurred.
Baumann argues that improper, bad-faith questioning of Detective Hanna by the State resulted in prejudice to him, thus depriving him of the fundamental right to a fair trial. Despite acknowledging that his counsel did not ask for a mistrial, Baumann claims that this court may still grant him relief. Generally, Arkansas does not follow the "plain error" rule, and "an argument for reversal will not be considered in the absence of an appropriate objection in the circuit court." Wicks v. State , 270 Ark. 781, 785-87, 606 S.W.2d 366, 369-70 (1980) (approving four limited exceptions to the general rule requiring a contemporaneous objection to preserve an issue for review: (1) a circuit court's failure to bring a matter essential to consideration of the death penalty to the jury's attention; (2) when error is made by the circuit court when counsel has no knowledge of the error; (3) when the circuit court has a duty to intervene and correct flagrant and highly prejudicial errors; and (4) under Ark. R. Evid. 103(d) providing that appellate courts are not denied review of errors affecting substantial rights even if not brought to the attention of the circuit court).
At the close of cross-examination, Baumann's counsel asked Detective Hanna if he was aware that E.S.'s mother, Shirley, had previously lied under oath making false sexual-assault allegations. Detective Hanna responded that he was not aware of that fact. On redirect examination, the State asked Hanna if any information regarding Shirley and her allegations against her own father would have made the case against Baumann any stronger to justify his not following up on those leads during his investigation. The State then changed the line of questioning to the CSC interview of E.S. Showing Detective Hanna the transcript of the interview of E.S., which he did not perform himself, the State instructed Detective Hanna to read a portion of the transcript that was a question being asked of E.S: "Okay. So, the interviewer says, 'Did your mom tell you about Tanya touching his real daughter and his other granddaughters before or after you told your mom and dad about-and then-.' " At that point, Baumann's counsel requested a bench conference. Before counsel made an objection, the circuit court remarked that the questioning was improper and was not supposed to be introduced, and even asked why Baumann's counsel did not object sooner before he had read the transcript out loud. The State stated, "I won't even go there," but Baumann claims that it was too late and that the line of questioning was flagrant misconduct that was highly prejudicial.
*505 Baumann urges that the third and fourth Wicks exceptions apply. The third Wicks exception is a narrow one that has thus far been applied only in cases in which the fundamental right to a jury trial is at issue. Rackley v. State , 371 Ark. 438, 440, 267 S.W.3d 578, 580 (2007). He urges that when a prosecutor makes an improper remark that is "flagrant" and "highly prejudicial in character," the circuit court has an independent duty to intervene and correct such error by either an admonition to the jury or declaring a mistrial. Wicks , 270 Ark. at 786, 606 S.W.2d at 369-70.
We disagree. Although Baumann did make a contemporaneous objection, he failed to move for a mistrial after his objection. No Wicks exception applies; specifically, the third exception has been applied very rarely to matters such as the right to a twelve-person jury; violations of Ark. Code Ann. § 16-89-125(e) (Repl. 2006), see Grinning v. City of Pine Bluff , 322 Ark. 45, 50, 907 S.W.2d 690, 692 (1995), and statements by a prosecutor in voir dire that have the effect of shifting the burden of proof, see Anderson v. State , 353 Ark. 384, 401, 108 S.W.3d 592, 603 ; cf. Chunestudy v. State , 2012 Ark. 222, at 10, 408 S.W.3d 55, 62 (holding arguments on evidence by the prosecution in closing do not fall under the third Wicks exception). The third Wicks exception has not been applied to consider possible prosecutorial errors in relation to cross-examination, E.g. , Vaughn v. State , 338 Ark. 220, 992 S.W.2d 785 (1999). The fourth exception is even more narrow and only applies to a ruling that admits or excludes evidence. Wicks , 270 Ark. at 787, 606 S.W.2d at 370. Our supreme court has long held that is it not enough to merely object-one must also move for a mistrial. Sanders v. State , 278 Ark. 420, 646 S.W.2d 14 (1983). Accordingly, we hold that the circuit court did not err in failing to grant a mistrial sua sponte in the absence of a request by Baumann.
Affirmed.
Virden and Vaught, JJ., Agree.

There was some inconsistency regarding Bridges's age. At the pretrial hearing, Bridges initially testified that she was around fourteen or fifteen years old when the abuse first occurred. On cross-examination during trial, she clarified that in the fifth grade, she would have been ten or eleven years old.

Bridges is Baumann's daughter and had been living in his home at the time of the alleged sexual abuse. E.S. had been staying the night with Baumann, under the care of his wife and him, and the alleged abuse occurred in his home. Baumann conceded that an "intimate relationship" exists for the purpose of the application of the pedophile exception, and he makes no argument on appeal with respect to this requirement.

Bridges testified that Baumann briefly stopped raping her when she began menstruating but resumed once he had a vasectomy.