Cite as 2023 Ark. App. 500

# ARKANSAS COURT OF APPEALS

DIVISION IV
№ CR-22-392

| | | |
|---|---|---|
| CHARLES GREENO | | Opinion Delivered November 1, 2023 |
| | **APPELLANT** | APPEAL FROM THE HOT SPRING COUNTY CIRCUIT COURT [NO. 30CR-19-368] |
| V. | | |
| STATE OF ARKANSAS | | HONORABLE STEPHEN L. SHIRRON, JUDGE |
| | **APPELLEE** | |
| | | AFFIRMED |

**MIKE MURPHY, Judge**

Appellant Charles Greeno appeals the decision of a Hot Spring County jury finding him guilty of rape and sentencing him to a term of thirty-five years in the Arkansas Department of Correction. We initially ordered rebriefing in this case; counsel has addressed our concerns, and we now reach the merits. On appeal, Greeno argues that substantial evidence does not support the verdict and that the circuit court erred in admitting some evidence under the pedophile exception. We affirm.

The following facts as presented at trial support the verdict. In 2019, MC1 disclosed to her school counselor that Greeno had repeatedly raped her over a five-year period, from when she was about four until she was about nine years old. At the time, Greeno was MC1's step-grandfather. MC1's mother testified that MC1 was diagnosed with clinical anxiety

sometime between the age of five and six. MC1 reiterated the disclosure in a forensic interview at the child safety center. MC1 testified about several different occasions in which she had sexual contact with Greeno. When she was four or five, Greeno took off her pants and performed oral sex on her while she watched *Frosty the Snowman*. She testified about another occasion when Greeno took her to a camper and "put his penis inside of me, not— not like all the way inside, but like between my lips . . . . I told him it hurt . . .he ejaculated on my stomach." A similar thing happened on another occasion in a truck while her brothers were swimming. She cried, but Greeno told her to be quiet or her brothers would hear. She testified about a time Greeno put his penis inside her mouth, causing her to gag. She testified about another time when he took her to a shed, made her stand on a stool, and "put his tongue on [her] vagina." She testified that on yet another occasion, "[she] told him to stop, because it hurt, and then he told [her] to shut the fuck up and take it." MC1 said these are some of her earliest memories. She recalls being very young and being afraid to tell anyone because Greeno told her if she told anybody "that something would happen to [her] mom."

MC2, Greeno's niece, also testified. She testified that when she was six or seven, Greeno was at her house, and he walked her around to the backyard where the following occurred:

> And we were standing there talking and he took my hand and he placed it on his penis, which was erect at the time and outside of his clothes. And whenever I started to move my hand, he moved it back and the entire time was telling me what a good girl I was, how much he loved me, how proud he was of me . . . and he started moving my hand up and down his penis until he ejaculated, which, at the time, I was unaware that that's what it was, but I knew that my hand became wet and sticky feeling and I didn't like it. And we were standing in front of those trees and I remember reaching

2

up and grabbing one of the leaves to try to wipe my hand off and clean it and asking him what kind of leaf that was on that tree. At which point, he just kept telling me, you know, I was a good girl, he loved me, and that type of thing. He started walking back around the front of the house with me and he picked me up and put me on his shoulders, at which point he started fondling me outside of my clothes. Whenever we made it to the edge of the house, he sat me back down and went over ~ back to my dad and his friend like nothing had happened and I was standing in the middle of the yard, didn't know what to do, my mom wasn't home.

MC2 told her mother. She was interviewed at the police station, but Greeno was never charged.

The jury found Greeno guilty of rape, and Greeno appealed. On appeal, Greeno challenges the sufficiency of the evidence supporting his conviction for the rape of MC1. Second, he alleges that the trial court abused its discretion by admitting MC2's testimony about her prior sexual contact with Greeno because the incident, which occurred twenty-nine years before the trial, was too remote in time to be admissible under the pedophile exception.

In reviewing challenges to the sufficiency of the evidence, we determine whether substantial evidence, direct or circumstantial, supports the verdict. *Ralston v. State*, 2019 Ark. App. 175, 573 S.W.3d 607. Substantial evidence is evidence of sufficient certainty to compel a conclusion without resort to suspicion or conjecture. *Id.* On review, we view the evidence in the light most favorable to the State and only consider evidence that supports the verdict. *Hillman v. State*, 2019 Ark. App. 89, at 2, 569 S.W.3d 372, 374.

To convict Greeno of rape, the State had to prove that he "engage[d] in sexual intercourse or deviate sexual activity with" MC1 "who was less than fourteen (14) years of

3

age." Ark. Code Ann. § 5-14-103(a)(3)(A) (Supp. 2023). Sexual intercourse means the penetration, however slight, of the labia majora by a penis. Ark. Code Ann. § 5-14-101(10) (Supp. 2023). Deviate sexual activity "means any act of sexual gratification involving the penetration, however slight, of the [] mouth of a person by the penis of another person [] or of the labia majora [] of one person by any body member [] manipulated by another person." Ark. Code Ann. § 5-14-101(1)(A)–(B). A rape victim's testimony, standing alone, can constitute substantial evidence supporting a rape conviction. *Hillman*, 2019 Ark. App. 89, at 2, 569 S.W.3d 372, 374. And in reaching its verdict, the jury, as the trier of fact, is free to believe all or part of witnesses' testimony and to resolve any questions of conflicting testimony and inconsistent evidence. *Lowe v. State*, 2016 Ark. App. 389, at 3, 500 S.W.3d 176, 178.

Here, MC1's testimony sufficiently establishes that she was less than fourteen when Greeno engaged in sexual intercourse or deviate sexual activity with her. Greeno argues on appeal that her testimony provided no specificity as to when the events to which she testified occurred. However, time is not an essential element of the crime of rape, and it is not necessary for the State to prove specifically when and where each act of rape occurred. *Burnside v. State*, 2015 Ark. App. 550, at 3, 472 S.W.3d 497, 499. MC1's testimony, standing alone, is substantial evidence to support the rape conviction.

Greeno next argues that the circuit court erred in admitting MC2's testimony because the event alleged by MC2 was almost thirty years in the past, no actions were taken by authorities, and its highly prejudicial nature outweighed its probative value.

Our standard of review is well settled. A trial court has wide discretion in making evidentiary rulings and will not be reversed absent an abuse of discretion. *Jackson v. State*, 375 Ark. 321, 340, 290 S.W.3d 574, 587 (2009). Pursuant to Arkansas Rule of Evidence 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." Such evidence is permissible for other purposes, however, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* That said, evidence of other crimes will be admitted if it has independent relevance, and its relevance is not substantially outweighed by the danger of unfair prejudice." Ark. R. Evid. 404(b); *Jones v. State*, 349 Ark. 331, 339, 78 S.W.3d 104, 110 (2002). Evidence is independently relevant if it tends to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. *Cluck v. State*, 365 Ark. 166, 175, 226 S.W.3d 780, 786 (2006). Furthermore, when the crime charged concerns the sexual assault of a minor, the "pedophile exception" to Rule 404(b) "allows the State to introduce evidence of the defendant's similar acts with the same or other children when it is helpful in showing a proclivity for a specific act with a person or class of persons with whom the defendant has an intimate relationship." *McDaniel v. State*, 2018 Ark. App. 151, at 5–7, 544 S.W.3d 115, 118–19. For the pedophile exception to apply, there must be a sufficient degree of similarity between the evidence to be introduced and the charged sexual conduct. *Id.*

Here, given the broad discretion we afford the trial court, it was not erroneous to admit MC2's Rule 404(b) testimony because the testimony fits squarely within the pedophile exception. Greeno contends that the event alleged occurred almost thirty years prior and it was too remote. He further contends it was unduly prejudicial. And while evidence must not be too separated in time to be unduly remote, we use a reasonableness standard to determine whether a crime remains relevant rather than a specific time limit. *Id.* at 6, 544 S.W.3d at 118–19. If the acts are substantially similar, then they can never be too remote. *Baumann v. State*, 2018 Ark. App. 564, at 11, 566 S.W.3d 494, 502. The trial court has wide discretion in balancing the conflicting interests, and its judgment will be upheld absent a manifest abuse of discretion. *Bragg v. State*, 328 Ark. 613, 626, 946 S.W.2d 654, 661 (1997). Under these standards, the trial court did not abuse its discretion by admitting evidence of Greeno's prior bad acts.

Affirmed.

GLADWIN and GRUBER, JJ., agree.

*Gregory Crain*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Jason Michael Johnson*, Ass't Att'y Gen., for appellee.