Cite as 2024 Ark. App. 353

# ARKANSAS COURT OF APPEALS
DIVISION I
No. CR-23-155

| | | |
|---|---|---|
| ROBERT RICHARDSON | | Opinion Delivered  May 29, 2024 |
| | APPELLANT | APPEAL FROM THE BENTON COUNTY CIRCUIT COURT [NO. 04CR-22-876] |
| V. | | |
| | | HONORABLE BRAD KARREN, JUDGE |
| STATE OF ARKANSAS | | AFFIRMED |
| | APPELLEE | |

**WENDY SCHOLTENS WOOD, Judge**

Robert Richardson appeals an order of the Benton County Circuit Court convicting him of rape and second-degree sexual assault. He received concurrent sentences of 720 months and 60 months in prison, respectively. Robert raises three arguments on appeal: (1) the evidence is insufficient to support the rape conviction; (2) he was convicted of rape and sexual assault for the same "transaction" in violation of double jeopardy; and (3) the circuit court abused its discretion by permitting the State to ask the minor victim (MV) how she felt during the sexual-assault examination. We affirm.

## I. *Facts*

On October 3, 2020, Leslie Richardson walked in on her husband, Robert, molesting MV, her fourteen-year-old daughter, at their home in Florida. MV disclosed to Florida law enforcement that Robert had sexually abused her while the family was living in Arkansas

between 2014 and 2016. On June 13, 2022, the State of Arkansas charged Robert with rape, alleging that he had engaged in sexual intercourse or deviate sexual activity with MV, who was less than fourteen years old, and with second-degree sexual assault, alleging that he was over the age of eighteen and had engaged in sexual contact with MV, a minor less than fourteen years of age and not his spouse. *See* Ark. Code Ann. § 5-14-103(a)(3), § 5-14-125(a)(3) (Repl. 2013). The State amended the information on July 12 to charge him as a habitual offender.

At trial, Leslie testified that MV was born in 2006. Leslie and Robert moved to Florida shortly after they married in 2010 but returned to Arkansas a year later because her father was ill. Leslie said that Robert is not MV's biological father but was the only father she had ever known. They also have three children together. Leslie said they lived in Arkansas until they returned to Florida in 2016. She identified photos of three of their residences in Arkansas, and the photos were introduced by the State. Leslie said that exhibit 1 was a photo of their apartment in Rogers, which is where they lived in 2013 and 2014; exhibit 2 was a photo of Robert's mother's house on McNelly Road near Bentonville where they lived in 2015; and exhibit 3 was a photo of a duplex near Beaver Lake where they lived in 2016 prior to returning to Florida.

Leslie testified that on October 3, 2020, she woke during the night to find that Robert was not in their bed. She said that she found him in MV's room where she saw him removing her underwear. She said that when she asked him what he was doing, he looked like he had been "caught" and claimed he was covering MV up. Leslie testified that MV was "huddled

up in the corner of the bed," crying. Leslie said that MV disclosed that the abuse that Leslie observed "had been going on for some time." Leslie testified about Robert's actions that followed, which included his making statements such as "he was sick and wanted [Leslie] to get him help," "he could not live with what he had done to [MV]," and "he was sorry." Leslie also said that Robert left the house with a handgun and threatened suicide, and she called the police because she was afraid he would follow through with his threat.

Law enforcement found and detained Robert and responded to the Richardsons' home. After speaking with Leslie and MV, Detective Joshua Green of the Polk County Sheriff's Department in Florida scheduled MV for a forensic interview and a rape-kit examination. While Detective Green was with Leslie, she received phone calls from Robert. Detective Green heard Robert state that he did not know why he had molested MV but that he was "owning it." Detective Green also heard Robert say that he could not remember the incidents of molestation but acknowledged that MV's accusations were truthful. A recording of phone calls was played for the jury. Detective Green testified that what stood out about the phone calls was that "they matched what [MV] had described in the forensic interview."

Detective Green conducted a custodial interview of Robert on October 4, 2020, in which Robert disclosed that he had "apparently" been "touching" MV for the past six years but did not remember any of it. Although Robert did not remember what happened, he said that MV said it happened, so it must have; Robert also said that he did not think MV or Leslie would lie about it. A recording of the interview was played for the jury.

Keisha Guyll of the Benton County Sheriff's Office testified that she is a criminal investigator and was assigned to the case after the Polk County Sheriff's Office forwarded the case information. After she reviewed MV's forensic interview, Robert's interview, and the cell-phone extractions, Guyll obtained an arrest warrant, and Robert was charged with rape and sexual assault.

MV, who was sixteen at the time of trial, testified that she had lived with Robert from the time she was two until she was fourteen. She said the abuse started when she was eight. She testified that they were living in a "complex kind of thing across from the school" in Arkansas. She identified exhibit 1, the apartment complex on New Hope Road, as the place where she had lived. MV said that she had to sleep with her mom and Robert because they had a houseguest. MV said that, during the night, Robert touched the inside and outside of her vagina. She said he "stuck his finger in my vagina," which caused her to say, "Ow," and then Robert whispered "our little secret" in her ear.

MV said that the next incident occurred when she was nine, and they were living at Robert's mother's house in Missouri. MV said that she would recognize the house if she saw it and identified exhibit 2 (the house on McNelly Road) as Robert's mother's house. MV testified about an incident in which she asked for popcorn and Robert told her she had to do something for him first. She said that Robert took her to his bedroom and made her "kiss his penis" multiple times. She said that the second time he made her put his penis in her mouth.

MV testified that when she was between nine and ten, they moved to the house shown in exhibit 3. MV said that Robert made her touch his body almost every morning, explaining that he made her "jack him off." MV described an incident in which she asked for ice cream, and Robert took her into the kitchen, bent her over the counter, pulled her pants down, and masturbated behind her. MV testified that after he masturbated, he took her to the dining room, made her get on her knees, told her to close her eyes, and put his penis in her mouth.

Robert testified on his own behalf. He said that he "pled" in Florida and was convicted of "lewd lascivious molestation" but denied that he had raped or sexually assaulted MV in Arkansas. He also explained that when he said he was sorry on the phone call, it was for the events that took place in Florida.

At the conclusion of the evidence, the jury convicted Robert of rape and second-degree sexual assault, and he was sentenced to an aggregate of 720 months in prison. This appeal followed.

## II. *Sufficiency of the Evidence – Rape*

Robert first challenges the sufficiency of the evidence to support the rape conviction, arguing that there was no proof that he penetrated MV in Benton County or anywhere in Arkansas. He asserts that MV alleged that penetration occurred only in Missouri and Florida.

In reviewing challenges to the sufficiency of the evidence, we determine whether substantial evidence, direct or circumstantial, supports the verdict. *Greeno v. State*, 2023 Ark. App. 500, at 3, 678 S.W.3d 617, 620. Substantial evidence is evidence of sufficient certainty to compel a conclusion without resort to suspicion or conjecture. *Id.*, 678 S.W.3d at 620.

5

On review, we view the evidence in the light most favorable to the State and consider only the evidence that supports the verdict. *Id.*, 678 S.W.3d at 620.

As charged in this case, a person commits rape if he or she engages in sexual intercourse or deviate sexual activity with another person who is less than fourteen years of age. Ark. Code Ann. § 5-14-103(a)(3)(A). "Deviate sexual activity" is defined as "the penetration, however slight, of the anus or mouth of a person by the penis of another person" or "the penetration, however slight, of the labia majora or anus of a person by any body member or foreign instrument manipulated by another person." Ark. Code Ann. § 5-14-101(1)(A)–(B) (Repl. 2013).

There was testimony about several incidents of penetration occurring in Benton County. MV testified that Robert digitally penetrated her vagina when she was eight years old in an apartment where she lived with her mother and Robert. MV was sleeping in the bed with her mom and Robert because they had guests. MV said that they were lying in bed; Robert put his hand on her pants and put his finger into her vagina, causing her to say "Ow"; and he whispered "our little secret" in her ear. MV identified a photo of the apartment in exhibit 1, which was the apartment on New Hope Road in Benton County, and testified that it was in Rogers.

MV also said that when she was around nine years old, Robert made her put his penis in her mouth when they lived at Robert's mother's house in Missouri. However, MV identified exhibit 2, which was a photograph of a house on McNelly Road in Benton County,

6

as Robert's mother's house. Leslie also identified the house shown in exhibit 2 as Robert's mother's house in the Bentonville area.

MV testified that after moving from Robert's mother's house, they lived in the home shown in exhibit 3, which was a photo of a house on Grimes Road in Benton County. MV testified that Robert put his penis in her mouth while living at that home.

A rape victim's testimony, standing alone, can constitute substantial evidence supporting a rape conviction. *Hillman v. State*, 2019 Ark. App. 89, at 2, 569 S.W.3d 372, 374. Viewing the evidence in the light most favorable to the State, we hold there is substantial evidence to support the rape conviction.

### III. *Double Jeopardy*

Robert next argues he was convicted of both rape and second-degree sexual assault for the same act in violation of double jeopardy. He contends that MV testified about only one alleged act of sexual misconduct that occurred in Arkansas. He contends that because second-degree sexual assault is a lesser-included offense of rape, he cannot be convicted of both offenses unless there was some evidence of separate impulses comprising separate acts of rape and second-degree sexual assault. Robert's double-jeopardy argument is not preserved.

An issue must be presented to the circuit court at the earliest opportunity in order to preserve it for appeal. *Fuller v. State*, 316 Ark. 341, 344, 872 S.W.2d 54, 56 (1994). Even a constitutional issue must be raised at trial in order to preserve the issue for appeal. *Id.*, 872 S.W.2d at 56. In *Brown v. State*, 347 Ark. 308, 65 S.W.3d 394 (2001), the supreme court

7

held that to preserve a double-jeopardy claim, the appellant must object after the jury returns the convictions. If the double-jeopardy argument was not raised below, we cannot consider that argument on direct appeal. *State v. Montague*, 341 Ark. 144, 147, 14 S.W.3d 867, 869 (2000); *Sorum v. State*, 2017 Ark. App. 384, at 12, 526 S.W.3d 50, 57; *Campbell v. State*, 2017 Ark. App. 340, at 9, 525 S.W.3d 465, 471.

Because Robert failed to raise his double-jeopardy argument below, we cannot consider it for the first time in this appeal.

IV. *Evidentiary Error*

For his last point on appeal, Robert argues that the circuit court abused its discretion by permitting the State to ask MV how she felt during the sexual-assault examination. Circuit courts have broad discretion in deciding evidentiary issues, and we will not reverse a circuit court's ruling on the admission of evidence absent an abuse of discretion. *Hartley v. State*, 2022 Ark. 197, at 8, 654 S.W.3d 802, 807. Abuse of discretion is a high threshold that does not simply require error in the circuit court's decision but requires that the circuit court act improvidently, thoughtlessly, or without due consideration. *Id.*, 654 S.W.3d at 807. Furthermore, we will not reverse the circuit court's decision unless the appellant demonstrates that he was prejudiced by the evidentiary ruling. *Id.*, 654 S.W.3d at 807.

After MV testified about the sexual-assault examination, the State asked her how she felt during the examination. Defense counsel raised an objection based on relevance, which the circuit court overruled. MV responded that she felt "uncomfortable." Robert argues that this line of questioning served only to evoke an emotional response from the jury.

8

Robert cites cases in which convictions have been reversed due to improper prosecutorial appeals to the jurors' passions and prejudices. *See, e.g.*, *Dillaha v. State*, 257 Ark. 476, 517 S.W.2d 513 (1975); *Adams v. State*, 229 Ark. 777, 318 S.W.2d 599 (1958). His reliance on these cases is misplaced because the objection here does not involve a prosecutor's remarks to a jury but only to a question directed to MV. Moreover, Robert has not demonstrated how he was prejudiced by MV's response that she was "uncomfortable" during the sexual-assault examination in light of the overwhelming evidence of his guilt-- MV's testimony, Robert's comments on the phone, and his statements during his interview. Because Robert has failed to show that he was prejudiced, we affirm this ruling.[1]

Affirmed.

ABRAMSON and GRUBER, JJ., agree.

*Lassiter & Cassinelli*, by: *Michael Kiel Kaiser*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Lauren Elizabeth Heil*, Ass't Att'y Gen., for appellee.

---

[1]We note that in the heading of his third point on appeal, Robert also takes issue with the State's further questioning of MV about whether the insertion of swabs in her vagina was the "only thing she had to go through at the hospital." However, when defense counsel objected on the basis of relevance, the circuit court sustained that objection. Therefore, Robert received the relief he requested and cannot object on appeal. *See Compton v. State*, 2023 Ark. App. 587, at 13, 682 S.W.3d 348, 356.