Cite as 2024 Ark. App. 451

# ARKANSAS COURT OF APPEALS

DIVISION II
NO. CR-22-746

| | |
|---|---|
| ROLANDO CUEVAS-FLORES | **Opinion Delivered** September 25, 2024 |
| APPELLANT | APPEAL FROM THE BENTON COUNTY CIRCUIT COURT [NO. 04CR-21-1484] |
| V. | |
| STATE OF ARKANSAS | HONORABLE BRADLEY LEWIS KARREN, |
| APPELLEE | JUDGE |
| | AFFIRMED |

### STEPHANIE POTTER BARRETT, Judge

Rolando Cuevas-Flores was convicted by a Benton County Circuit Court jury of the offenses of rape and sexual assault in the second degree. He was sentenced to an aggregate of thirty years' imprisonment for the two offenses. Cuevas-Flores makes three arguments on appeal: (1) the circuit court erred in granting the State's motion in limine to preclude him from eliciting testimony from a witness regarding her sexual history with a third party; (2) the circuit court erred in holding that the pedophile exception to Arkansas Rule of Evidence 404(b) applied and allowing Palona Uscanga to testify that Cuevas-Flores sexually assaulted her; and (3) the jury verdicts were not supported by substantial evidence. We affirm.

## I. *Facts*

Palona Uscanga is the mother of the four-year-old victim, MV. Cuevas-Flores is Uscanga's former stepfather, and MV refers to him as Grandpa. Prior to trial, the circuit

court held an evidentiary hearing on the State's motion in limine requesting that Uscanga be allowed to testify that she was sexually abused by Cuevas-Flores beginning when she was five or six years old and continuing until she was fifteen. At the hearing, Uscanga recalled a specific incident when she was five or six; she was in the living room watching television while her mother was in the shower; and Cuevas-Flores came in, grabbed her by her ankles, covered her mouth, and began licking her between her legs on her private parts. Uscanga testified that, after that, Cuevas-Flores began coming into her bedroom at night, trying to put his hands all over her body and trying to kiss her body. Cuevas-Flores opposed the motion. The circuit court granted the State's motion in limine, holding that pursuant to the "pedophile exception" to Arkansas Rule of Evidence 404(b), the State would be allowed to introduce evidence that Cuevas-Flores sexually abused Uscanga, concluding that the acts were similar, the victims were both prepubescent females, both had an intimate relationship with Cuevas-Flores, it was a close proximity of time, and the evidence was independently relevant.

On the first day of trial, after the jury was selected, Uscanga's grandmother, Maria de la Cruz Garza, who lived with Uscanga and her two children, testified that in April 2021, Uscanga took MV to Cuevas-Flores's house, where her then fifteen-year-old half sister, VC, lived with Cuevas-Flores (VC's father) and her brother, Hector Cuevas, so that VC could babysit MV while Uscanga went to the gym. De la Cruz Garza said that, when she returned home that night, MV did not report anything to her, but the next day MV told her three times that Grandpa "see cola" (MV's word for her genitals) and opened her legs; when de la

2

Cruz Garza called Uscanga and told her what MV said, Uscanga came home and questioned MV.

On the second day of trial, as a preliminary matter, the State requested that the defense be prohibited from eliciting testimony from any witness about being sexually assaulted by another person. Specifically, the State asked that VC, Uscanga's half sister and a witness for the State, not be allowed to testify that she was sexually assaulted by a third party because it was not relevant, and it was prohibited by the rape-shield statute. Defense counsel countered that Cuevas-Flores is VC's father and that when VC had previously lived with her biological mother several years earlier, her mother's boyfriend sexually assaulted VC. When Cuevas-Flores learned about the assault, he rearranged his work schedule, and VC left her mother's house and moved in with him. Defense counsel argued that VC's sexual abuse molded the manner in which she took care of her niece, MV, while she was babysitting her. VC had told detectives that she had a policy of not allowing MV in bedrooms alone because of her own prior experience of being a victim of sexual abuse. The circuit court asked defense counsel why he could not simply inquire about VC's policy of not allowing MV in bedrooms by herself without broaching the prior sexual assault. Defense counsel countered that the jury needed to hear the basis for VC's deeply held belief behind her policy so that the jury would not conclude that VC was making it up to protect her father. The State argued that such evidence was protected by the rape-shield statute, and VC could not waive that protection. The court ruled that VC could testify that she had a strict rule that children she babysat did not go into a bedroom alone for their own safety but not

3

that she had been sexually assaulted by her mother's boyfriend. When defense counsel questioned if the ruling meant that any victim of any crime could not testify about prior sexual abuse, the circuit court ruled that the statute protected all sexual-abuse victims from having to testify about their sexual abuse.

The trial resumed, and Uscanga testified that on April 26, 2021, VC still resided with Cuevas-Flores. Uscanga stated that she took MV to Cuevas-Flores's house for VC to babysit her. VC's brothers, Luis and Hector, were at the house, but not Cuevas-Flores. Uscanga testified that when she returned to pick up MV about one and a half hours later, MV was in the living room by herself, and Cuevas-Flores was home. Uscanga stated that Luis and Hector were in their rooms when she arrived to pick up MV. Uscanga took MV home, and they went to bed.

The next day, Uscanga received a phone call from her grandmother while at work. She went home, and MV told her what had happened with Cuevas-Flores. Uscanga eventually took MV to a Children's Advocacy Center ("CAC"), where a forensic interviewer met with MV, and MV underwent a physical exam. Uscanga testified that on the night of the incident, she was worried when she saw that Cuevas-Flores was home when she returned to pick MV up, explaining to the jury that when she was five, Cuevas-Flores had grabbed her by her ankles, lifted her up, and began licking her private area, and for several years after that, he had continued to come into her bedroom and had attempted to place his hands all over her body and kiss her body. Uscanga explained that "cola" was the Spanish word for vagina, and that was what MV called her vagina.

4

Rick Yager, a detective with the Rogers Police Department, testified that he had investigated MV's hotline report. After watching the CAC interview and speaking to Uscanga, Yager was able to develop Cuevas-Flores as a suspect. Yager testified that he triangulated the data from Cuevas-Flores's phone and he could place Cuevas-Flores in the general area of his house from 6:29 to 7:39 p.m..

Juan Alvarez testified that Cuevas-Flores is his stepfather. Juan said he spent the day at Cuevas-Flores's house on April 26 playing video games, working on his car, and watching television. Hector, Luis, VC, and MV were also at the house. Juan said that MV was in the living room playing games on her tablet and that Cuevas-Flores came home right after lunch and began packing for a trip. Juan admitted that he did not see MV 100 percent of the time he was there, but he never saw MV go into Cuevas-Flores's bedroom.

Luis Cuevas testified that in April 2021, he lived with Cuevas-Flores; his brother, Hector; and his sister, VC, and on the day in question, his dad was in and out because he was packing for a trip. He admitted that he was not with his dad or MV 100 percent of the time while MV was at the house, but he denied seeing Cuevas-Flores sexually assault MV.

At trial, VC testified that she was sixteen years old, and she currently lived with her mother. In April 2021, she had lived with her dad and her two brothers. VC recalled babysitting MV in April 2021. She said that during some of the time MV was there, she was in her room working on a school project, but her father was not home while she was working on her school project. VC stated that her brothers were in the living room with MV while she was working on her project, but she would periodically check on MV during that time.

5

She said that MV was still at her house when her father got home that night around 7:00 or 8:00 p.m. VC denied that MV was alone in the living room when Uscanga arrived to pick her up. She said that by the time her father got home, she was generally in the vicinity of MV, and she denied that MV had gone into any of the bedrooms.

Amber O'Malley, a forensic nurse examiner, testified that she performed an anogenital exam on MV's genitals, and while MV's hymen did have an anatomical variation, it was a congenital variance, not a finding definitive of sexual abuse. Her blood work and urine samples were negative for sexually transmitted diseases, and there were no physical findings. However, O'Malley testified that no physical findings was normal for a majority of children examined for sexual contact and abuse; it did not mean that something did not happen. When asked by the State what a child means when he or she says "inside my body," O'Malley stated that children do not always have a good understanding of what "in" means. She explained that penetration by an object past the labia majora was not necessarily penetration of the hymen into the vagina, which would cause the child to feel a significant amount of pain, but that penetration past the labia majora was still "in" even if the object did not pass through the hymen to the vagina.

Edith Wineland, the bilingual forensic interviewer who performed the recorded interview with MV, testified that nonleading, open-ended questions are used in interviews as well as black and white diagrams of unclothed males and females where children can name the body parts and anatomically correct dolls the children can use to help explain what has

happened to them. She said that it was easier for some children to show what happened rather than use their words.

MV, who was five years old at the time of trial, testified. When asked if anyone had given her touches that were not okay, MV said no. At that time, the State moved to introduce the CAC video interview as a prior inconsistent statement; defense counsel requested that a hearing be held on that issue, and the circuit court agreed, stating that it needed to determine whether the video possessed a reasonable guarantee of trustworthiness and whether MV was competent. After reviewing the recorded CAC video outside the presence of the jury, the circuit court found that MV's testimony that there were no bad touches was inconsistent with the information in the CAC video. Defense counsel argued that the CAC video was not trustworthy because MV had testified that there were no bad touches on the stand, which was contrary to what was contained in the video; he further pointed out that there were absolutely no findings of sexual abuse. The State countered that there had been a year between the video interview and MV's testimony on the stand, and it was possible that she simply did not remember. The circuit court determined that there were sufficient guarantees of trustworthiness in the videotaped CAC interview and granted the State's motion to allow the interview to be played for the jury.

The CAC video was played for the jury; while the jurors were also given a transcript of the interview, the circuit court instructed them that the transcript was not evidence, only the video. In the videotaped interview, MV told Wineland that Grandpa touched her "cola" with his hand and his tongue, and he put his penis in her "cola," "butt," and mouth.

Additionally, the video showed MV point to her vaginal area and demonstrate what Grandpa had done when she said that Grandpa touched her cola with his hand and tongue; she identified the vagina and penis on the male and female diagrams when shown; and she simulated sexual intercourse with the anatomically correct dolls when asked to show the interviewer what Grandpa had done.

Defense counsel did not cross-examine MV after the CAC video was played for the jury, and the State rested at that time. Cuevas-Flores moved for directed verdicts on both counts, arguing that for rape, the State had failed to prove there was penetration; and as to second-degree sexual assault, MV's testimony was inconsistent and that she had said someone else had touched her cola, but she did not say who that was. He argued that there was no evidence to support the required element of penile-vaginal penetration. In response, the State argued that MV stated in the interview that Grandpa put it in the cola and in her mouth; when asked to identify on the diagrams what "it" was, she pointed to the male penis. The State further pointed out that Nurse O'Malley testified that when a child says "in," it did not mean in the vaginal canal affecting the hymen; "in" could be inside the labia majora, which is all that is required by the statute. Furthermore, it was clear that MV said Grandpa touched her cola with his hand and with his tongue. After taking some time to review notes, the circuit court denied Cuevas-Flores's motion for directed verdict.

Cuevas-Flores testified in his own defense. He said that he came into the house on April 21 and was in a hurry because he had only an hour to pack for a trip, and he had to pick up his rental car. He said that he was at the house with MV for thirty minutes to an

8

hour but that he was never alone with her; he said that Uscanga arrived while he was in the process of leaving. He denied that he had engaged in the sexual acts of which he was accused by MV and Uscanga. After his testimony, Cuevas-Flores renewed his motions for directed verdict on both allegations, and the circuit court denied the motions. The jury returned guilty verdicts on both counts.

## II. *Sufficiency of the Evidence*

Although it is his third point of appeal, double-jeopardy concerns require that we address Cuevas-Flores's sufficiency argument before considering any other evidentiary argument. Preservation of an appellant's right to freedom from double jeopardy requires a review of the sufficiency of the evidence prior to a review of trial errors. *Lester v. State*, 2024 Ark. App. 206, 687 S.W.3d 344. When reviewing the sufficiency of the evidence, this court considers all the evidence, whether admitted properly or erroneously; even if the circuit court abused its discretion in admitting certain evidence, we will nevertheless consider it in determining whether the verdict is supported by substantial evidence. *Burciaga v. State*, 2024 Ark. App. 341, 690 S.W.3d 456.

Cuevas-Flores argues that the forensic interview with four-year-old MV was "inconsistent, at times incoherent, and confusing." He summarizes MV's statements during the interview, stating that she said "at various times that Grandpa (Rolando) touched her cola with his hand, that he hit her, that his pants were off, that he was lying down on the bed, that he put something in her nose, her mouth, her butt, and her cola, that at some

point he was 'gussin' and it was gross, and that he put his tongue in her cola." Cuevas-Flores also points out that the forensic examination revealed no physical evidence that MV had been raped or sexually abused.

A motion for directed verdict at a jury trial is considered a challenge to the sufficiency of the evidence. *McGaugh v. State*, 2023 Ark. App. 457, 678 S.W.3d 410. In reviewing a sufficiency challenge, we view the evidence in the light most favorable to the State and consider only the evidence that supports the verdict. *Id.* A conviction will be affirmed if substantial evidence exists to support it; substantial evidence is evidence of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without resorting to speculation or conjecture. *Id.* The credibility of witnesses and the weight of the evidence are matters for the finder of fact to decide, and this court may not reweigh the evidence or substitute our own credibility determinations for those of the finder of fact. *Baker v. State*, 2022 Ark. App. 391, 654 S.W.3d 63.

A person commits rape "if he or she engages in sexual intercourse or deviate sexual activity with another person who is less than fourteen years of age." Ark. Code Ann. § 5-14-103(a)(3)(A) (Supp. 2019). "Deviate sexual activity" is defined as "any act of sexual gratification involving the penetration, however slight, of the anus or mouth of a person by the penis of another person; or the penetration, however slight, of the labia majora or anus of a person by any body member or foreign instrument manipulated by another person." Ark. Code Ann. § 5-14-101(1)(A) & (B) (Supp. 2019). A person commits sexual assault in the second degree "if the person, being eighteen years of age or older, engages in sexual

10

contact with another person who is less than fourteen years of age." Ark. Code Ann. § 5-14-125(a)(3) (Supp. 2019). "Sexual contact" is "any act of sexual gratification involving the touching, directly or through clothing, of the sex organs, buttocks, or anus of a person or the breast of a female." Ark. Code Ann. § 5-14-101(11).

In sex-crime prosecutions, a victim's testimony need not be corroborated to support conviction. *Morrison v. State*, 2024 Ark. App. 300. Nor is scientific evidence required. *Hartley v. State*, 2022 Ark. 197, 654 S.W.3d 802. A victim's testimony alone is substantial evidence that will support a conviction if the testimony adequately specifies the acts prohibited by law, even when the victim is a child. *Id.* Witness credibility is an issue for the jury, and the appellate court will not second-guess the determinations of the trier of fact. *Shelton v. State*, 2017 Ark. App. 195, 517 S.W.3d 461.

The evidence presented at trial substantiates that MV was raped and sexually assaulted by Cuevas-Flores. In the video of her forensic interview, which was played for the jury, MV told the interviewer that Grandpa touched her "cola" with his hand and his tongue, and he put his penis in her "cola," "butt," and mouth. Additionally, the video shows MV pointing to her vaginal area when she said that Grandpa touched her cola with his hand and tongue, she identified the vagina and penis on the male and female diagrams when shown, and she simulated sexual intercourse with the dolls when asked to show the interviewer what Grandpa did. The credibility of MV's testimony was an issue for the jury to determine. We hold that there was sufficient evidence to support the jury's verdicts, and we affirm the convictions.

11

### III. *Pedophile Exception to Rule 404(b)*

Cuevas-Flores also argues that the circuit court erred in allowing Uscanga, his former stepdaughter and MV's mother, to testify about an alleged prior sexual assault on her by Cuevas-Flores under the "pedophile exception" to Arkansas Rule of Evidence 404(b). A circuit court is given wide discretion in making evidentiary rulings; those decisions will not be reversed absent an abuse of discretion. *Greeno v. State*, 2023 Ark. App. 500, 678 S.W.3d 617. Rule 404(b) of the Arkansas Rules of Evidence provides, "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evidence of other crimes will be admitted if it has independent relevance, and the relevance is not substantially outweighed by the danger of unfair prejudice; evidence is independently relevant if it tends to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. *Greeno, supra*. Furthermore, when the crime charged concerns the sexual assault of a minor, the "pedophile exception" to Rule 404(b) "allows the State to introduce evidence of the defendant's similar acts with the same or other children when it is helpful in showing a proclivity for a specific act with a person or class of persons with whom the defendant has an intimate relationship." *McDaniel v. State*, 2018 Ark. App. 151, at 5–7, 544 S.W.3d 115, 118–19. For the pedophile exception to apply, there must be a sufficient degree of similarity between the evidence to be introduced and the charged sexual

conduct. *Id.* The evidence admitted pursuant to Rule 404(b) cannot be too remote in time; a reasonableness standard is employed to determine whether a crime remains relevant instead of a specified amount of time. *Baumann v. State*, 2018 Ark. App. 564, 566 S.W.3d 494. The reasonableness requirement is automatically met if the requirement of similarity is satisfied. *Id.*

The offenses against Uscanga and MV were substantially similar. Both accused Cuevas-Flores of performing oral sex on them; Uscanga was five or six years old when her sexual abuse occurred, while MV was four; and Cuevas-Flores had an intimate relationship with both of them. We hold that there is a sufficient degree of similarity between the evidence to be introduced and the charged sexual conduct; therefore, the circuit court did not abuse its discretion in allowing this testimony.

IV. *Rape-Shield Statute*

Cuevas-Flores also asserts that the circuit court erred in finding that our rape-shield statute applies to any witness who has been a victim of any sex crime, which prevented him from questioning his daughter, VC, regarding the fact that she had previously been sexually assaulted by her mother's boyfriend. He wanted to elicit this testimony to show that, because of this previous sexual assault, VC had a policy that children she babysat were not allowed to go into bedrooms alone. Cuevas-Flores's attorney argued that the rape-shield statute was applicable only to the victim in the case being prosecuted, but the circuit court disagreed, finding that such testimony was not admissible under the rape-shield statute, and VC could not waive the protection of the rape-shield statute. However, the circuit court determined

that VC could testify that she had such a policy without being asked about her prior sexual history. Cuevas-Flores's attorney declined the circuit court's offer, stating that he needed to be able to ask VC why she had such a policy so that the jury would not think she was making it up to protect her father. Cuevas-Flores argues on appeal, as he did below, that the rape-shield statute is applicable only to the complaining victim/witness in the case being currently prosecuted, not to any witness who is not the complainant who had been sexually abused or assaulted who wanted to testify that he or she had been sexually abused or assaulted.

We need not address whether the rape-shield statute is applicable to any victim of a sexual offense or only to the victim of the crime being prosecuted because Cuevas-Flores cannot demonstrate prejudice from the circuit court's refusal to allow VC to testify that, due to the fact that she had been sexually abused by one of her mother's boyfriends, she had a policy that children she babysat were not allowed alone in bedrooms. This court may affirm a conviction and deem an evidentiary error harmless if the evidence of guilt is overwhelming and the error is slight. *Washington v. State*, 2024 Ark. App. 134, 686 S.W.3d 61. To determine if error is slight, we look to see if the defendant was prejudiced. *Monday v. State*, 2019 Ark. App. 290, 577 S.W.3d 460. Prejudice is not presumed on appeal, and an assessment of prejudice must take into account that the uncorroborated testimony of a minor victim alone is substantial evidence to sustain a conviction for sex offenses. *Washington*, *supra*. Furthermore, evidence that is merely cumulative or repetitious of other evidence admitted without objection cannot be claimed to be prejudicial. *Burns v. State*, 2024 Ark. App. 329, 690 S.W.3d 133.

The video of MV's forensic interview by itself, in which she demonstrates where and how Cuevas-Flores touched her, as discussed above, constitutes substantial evidence to sustain Cuevas-Flores's convictions. *See Mondy*, *supra*. Additionally, Uscanga was allowed to testify under the pedophile exception that Cuevas-Flores had sexually abused her in a similar manner when she was approximately MV's age. *Kelley v. State*, 2009 Ark. 389, 327 S.W.3d 373 (testimony of another victim of defendant, whom the victim considered a "stepfather figure," raped at the same age as victim in present case was allowed under the pedophile exception to Rule 404(b)). Furthermore, if the circuit court's refusal to allow VC's testimony that her prior sexual abuse motivated her policy of not allowing children to be in bedrooms alone while she was caring for them was erroneous, the error was slight. The circuit court ruled that Cuevas-Flores would be allowed to elicit testimony from VC that she had a policy that children she babysat were not allowed in bedrooms by themselves; however, he declined to do so. Furthermore, VC testified that she was not with MV all the time that MV was in her care. It cannot be said that VC enforced her own-policy or even knew if it was followed on this day. Because Cuevas-Flores failed to establish prejudice, we hold that any evidentiary error was harmless, and we affirm.

Affirmed.

WOOD and HIXSON, JJ., agree.

*Putman Law Office*, by: *William B. Putman*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Lauren Elizabeth Heil*, Ass't Att'y Gen., for appellee.

15