Cite as 2024 Ark. App. 490

# ARKANSAS COURT OF APPEALS
## DIVISION I
### No. CR-23-762

| | |
|---|---|
| KENNETH WAGGONER<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | Opinion Delivered October 9, 2024<br><br>APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, GREENWOOD DISTRICT [NO. 66GCR-22-159]<br><br>HONORABLE STEPHEN TABOR, JUDGE<br><br>AFFIRMED |

**CINDY GRACE THYER, Judge**

Kenneth Waggoner was convicted by a Sebastian County jury of one count of second-degree sexual assault for engaging in sexual contact with another person under the age of fourteen, in violation of Arkansas Code Annotated section 5-14-125(a)(1)(3) (Repl. 2013). On appeal, he does not challenge the sufficiency of the evidence supporting his conviction. Instead, he contends that the circuit court erred in admitting evidence of other incidents of sexual assault under the "pedophile exception" to Arkansas Rule of Evidence 404(b). We find no error and affirm.

## I. *Background*

Waggoner is the step-grandfather of the victim in this case, a minor child (MC) who was between the ages of eight and ten at the time of the alleged offenses. MC's father,

Johnathan London, was previously married to Waggoner's daughter, Heather London. MC would frequently stay at the home of Heather's sister, Brandi McLennan, while Johnathan and Heather were married.

Waggoner was arrested in Oklahoma in 2021 after he was alleged to have sexually assaulted two girls under the age of eighteen. In a statement to police, he admitted that he had touched both girls by placing his hands under their shirts onto their breasts and had also touched their vaginal areas. When Johnathan heard from Heather about Waggoner's Oklahoma arrest, he asked MC if Waggoner had ever touched her. She immediately said that he had.

Darrell Miner, a commander with the Criminal Investigations Division of the Sebastian County Sheriff's Office, took MC for a forensic interview at Hamilton House. MC told the interviewer that on four or five occasions while she was spending the night at Brandi's house, Waggoner would come into the room where she was sleeping and put his hand inside her pants under her underwear. MC was between eight and ten years old when these incidents happened. After watching the interview, Miner spoke to Brandi, who confirmed that both MC and Waggoner had spent the night at her house at the same time. Miner then interviewed Waggoner. Waggoner initially denied having touched MC but then said if he did touch her, it was accidental.

Waggoner was arrested and charged with second-degree sexual assault. The State subsequently filed a motion in limine stating its intention to elicit testimony under the "pedophile exception" to Arkansas Rule of Evidence 404(b). Specifically, the motion stated

that the State wished to introduce the testimony of Police Chief Matthew Hines, who investigated the sexual-assault allegations in Oklahoma; and Brandi, who alleged that Waggoner had molested her when she was seven years old.

The circuit court held a hearing on the State's motion in limine before trial. Brandi testified that Waggoner had been married to her mother when she was born and lived with them until she was about eight years old. When Brandi was six or seven years old, she was home alone when Waggoner entered the room, pulled her panties off, and touched her vagina. She told her mother about the incident, and Waggoner was arrested and later convicted for the assault.

Police Chief Matthew Hines of the Savanna Police Department in Oklahoma testified that he investigated two counts of sexual assault that Waggoner was alleged to have perpetrated in Oklahoma in 2021. Hines explained that two girls claimed that Waggoner engaged in "inappropriate touching of the vagina area and the breast area" when they were between seven and ten years old. Hines subsequently interviewed Waggoner, who at first denied the allegations but ultimately confessed to having touched both girls on their vaginas and breasts.

At the end of the hearing, Waggoner acknowledged the pedophile exception to Arkansas Rule of Evidence 404(b) but argued that the introduction of Brandi's and Hines's testimony would "prejudice [him] to an insurmountable degree." He therefore argued that the court should exclude the testimony pursuant to Arkansas Rule of Evidence 403. The court ruled that it would allow the testimony because of the "similar allegations in all three

3

of these cases involving the age of the alleged victims as well as the [fact that the] type of behavior almost mirror[s] each other." The court also noted that Waggoner had commented in his statement to police that if he had touched MC, it was an accident, reasoning that Rule 404(b) "allows testimony regarding other bad acts in the face of the defense that it's a mistake or an accident, so it would also be admissible in my view for that reason." The court thus granted the State's motion, noting that it would "certainly offer a limiting instruction at the appropriate time." The court did not, however address Waggoner's argument concerning Rule 403.

The matter proceeded to trial. Before testimony commenced, Waggoner unsuccessfully renewed his objection to the State's use of Rule 404(b) evidence and asked the court to "reconsider" his argument concerning Rule 403. The court stated that its "ruling remains the same."

MC, who was fourteen at the time of the trial, testified that Waggoner, whom she called Papa Kenny, is the father of her ex-stepmother, Heather. She recalled that when her father was married to Heather, she would sometimes stay at the home of Heather's sister, Brandi. She said she normally slept on a couch in the living room when she spent the night there. One night, when she was around seven years old, she had fallen asleep on the couch when Waggoner touched her vagina; she explained that he touched her under her clothes with his hand. He did the same thing on at least five other occasions, with the last incident occurring when she was ten. She did not say anything about it to anyone at the time because

4

she was scared. She finally told her father after he had learned about Waggoner's arrest in the Oklahoma incident, and he asked her if Waggoner had ever done anything to her.

Before the State presented its Rule 404(b) witnesses, the court instructed the jury that evidence of other alleged crimes or bad acts committed by Waggoner

> may not be considered by you to prove the character of Kenneth Waggoner in order to show that he acted in conformity therewith. This evidence is not to be considered to establish a particular trait of character that he may have nor is it to be considered to show that he acted similarly or accordingly on the day of the incident. The evidence is merely offered as evidence of motive, opportunity, intent, plan, knowledge, or absence of mistake or neglect. Whether any alleged crimes, wrongs, or acts have been committed is for you to determine.

Brandi then testified that Waggoner molested her when she was six years old. She said that she was on a couch in her living room when he touched her vagina with his finger and told her not to tell anyone. She added that he was convicted "of what he did to" her, and the State introduced, without objection, a certified copy of Waggoner's 1991 conviction for first-degree sexual assault.

The State then called Chief Hines. Hines testified that he investigated two sexual-assault cases involving girls under the age of sixteen. When he interviewed Waggoner in 2021 about the alleged assaults, Waggoner confessed that he had inappropriately touched the two girls by placing his hand under their shirts and on their breasts and by touching their vaginal areas.

The State rested, and the jury went on to convict Waggoner of second-degree sexual assault. He was sentenced to twenty years in the Arkansas Division of Correction. Waggoner

timely appealed, and he now argues that the circuit court erred in permitting evidence of his prior bad acts under Rule 404(b).

## II. *Standard of Review*

Waggoner challenges the circuit court's ruling regarding the introduction of Rule 404(b) evidence.  Our standard of review on such matters is well settled. A circuit court has wide discretion in making evidentiary rulings and will not be reversed absent an abuse of discretion. *Greeno v. State*,  2023 Ark. App. 500, at 5, 678 S.W.3d 617, 620 (citing *Jackson v. State*, 375 Ark. 321, 340, 290 S.W.3d 574, 587 (2009)).

## III. *Discussion*

Waggoner argues on appeal that the circuit court "erred in admitting evidence of prior bad acts under the 'pedophile exception' to Arkansas Rule of Evidence 404(b) when the court failed to consider whether the evidence should have been excluded under Arkansas Rule of Evidence 403." Specifically, he urges that the court was required to conduct the balancing test set forth in Rule 403, which provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Because the court "did not engage in any analysis regarding whether the probative value of [the evidence of his prior bad acts] is substantially outweighed by the danger of unfair prejudice," he argues that the court abused its discretion in admitting the evidence of his prior sexual assaults.

This specific argument, however, is not preserved for appellate review because the circuit court did not rule on Waggoner's Rule 403 argument. In *Duvall v. State*, 2018 Ark. App. 155, at 9, 544 S.W.3d 106, 112, this court considered a "catchall 403 argument" in which the appellant, Duvall, asserted that even if the appellate court were to determine that his alleged prior bad acts were sufficiently similar to his current charges, evidence of previous rape allegations against him was still unduly prejudicial. This court declined to reach his arguments "because there is not a clear ruling by the circuit court on whether the probative value of each witness's testimony to the State's case substantially outweighed the danger of unfair prejudice to him. An appellant *must obtain a ruling on whether Rule 404(b) evidence should have been excluded under Rule 403* to preserve the issue for an appeal." *Duvall*, 2018 Ark. App. 155, at 9–10, 544 S.W.3d at 112 (emphasis added); *see also Hortenberry v. State*, 2017 Ark. 261, at 12–13, 526 S.W.3d 840, 848 (declining to address argument that circuit court failed to conduct a Rule 403 balancing test before admitting testimony of previous sexual assault victims because, while appellant raised a Rule 403 challenge to the testimony, he failed to obtain a ruling from the circuit court); *Cluck v. State*, 365 Ark. 166, 175, 226 S.W.3d 780, 787 (2006) (refusing to reach a Rule 403 argument because the appellant failed to obtain a ruling on it from the circuit court); *Roberts v. State*, 2024 Ark. App. 219, at 8, 686 S.W.3d 896, 901–02 ("An appellant must obtain a ruling on whether Rule 404(b) evidence should have been excluded under Rule 403 to preserve the issue for an appeal."); *Baumann v. State*, 2018 Ark. App. 564, at 14–15, 566 S.W.3d 494, 503 (same).

7

The cases on which Waggoner relies do not help him. It is true that in *Peebles v. State*, 2019 Ark. App. 483, 588 S.W.3d 355, this court reversed the appellant's conviction because the circuit court failed to engage in a Rule 403 analysis before admitting photographs of child pornography found on appellant Peebles's computer. The conviction was reversed, however, because the circuit court had erroneously concluded that Rule 403 was inapplicable during the sentencing phase of a trial. That is, the reversal was premised on a misinterpretation of the law because Rule 403 is applicable during sentencing.

Waggoner's citation to *Peer v. State*, 2020 Ark. App. 181, 598 S.W.3d 59, is likewise inapposite. In that case, appellant Peer argued that the circuit court did not undertake a Rule 403 analysis regarding the introduction of her prior convictions. This court affirmed, however, because Peer failed to cite Rule 403 at trial and did not refer to or ask the court to make a balancing analysis.

Waggoner's argument on appeal is limited to his contention that the circuit court erred in failing to conduct the balancing test required by Rule 403.[1] Because he failed to get a ruling on this issue, his argument is not preserved for appeal.

---

[1] Insofar as we consider the question of prejudice, we note that "prejudice is not presumed on appeal, and an assessment of prejudice must take into account that the uncorroborated testimony of a minor victim alone is substantial evidence to sustain a conviction for a sex offense." *Washington v. State*, 2024 Ark. App. 134, at 9, 686 S.W.3d 61, 69. Waggoner was convicted of second-degree sexual assault. A person commits this offense if, being eighteen years of age or older, the person engages in sexual contact with another person who is less than fourteen years of age. Ark. Code Ann. § 5-14-125(a)(3). Sexual contact means "[a]n act of sexual gratification involving the touching, directly or through clothing, of the sex organs, buttocks, or anus of a person or the breast of a female." Ark. Code Ann. § 5-14-101(12)(A) (Repl. 2013). Given MC's direct testimony that Waggoner put

8

Affirmed.

HARRISON, C.J., and GRUBER, J., agree.

*Knutson Law Firm*, by: *Gregg A. Knutson*, for appellant.

*Tim Griffin*, Att'y Gen., by: *A. Evangeline Bacon*, Ass't Att'y Gen., for appellee.

---

his hand under her clothes and touched her vagina when she was between the ages of eight and ten, it would be difficult to conclude that the admission of the State's Rule 404(b) evidence unfairly prejudiced Waggoner.